## AROCHO v. PEOPLE OF PORTO RICO.*

(Circuit Court of Appeals, First Circuit. November 23, 1926.)

### No. 2019.

1. **Courts** ⊂⊃406(1)—Construction of Porto Rican statutes by local courts will not be disturbed, unless clearly erroneous.

Local court's construction of Porto Rican statutes will not be held erroneous, except in clear cases.

*Certiorari denied 47 S. Ct. 477, 71 L. Ed. ——.

2. **Statutes** ⊂⊃118(6)—Provision of act temporarily abolishing death penalty, by which act was to stand repealed on certain date, held not ineffective, as not expressed in title (Acts Porto Rico 1917, No. 36, § 6; Organic Act Porto Rico, § 34; Penal Code Porto Rico, §§ 202, 219).

Section 6, No. 36, Acts Porto Rico, 1917, entitled "An act temporarily to abolish the death penalty in Porto Rico, to amend sections 202 and 219 of the Penal Code," which provided that the act should stand repealed on a certain date unless the legislative assembly before that date otherwise provided, *held* not ineffective as violative of Organic Act Porto Rico, § 34, requiring subject of act to be clearly expressed in its title.

3. **Statutes** ⊂⊃109—Porto Rican act is not violative of organic law, if objects thereof are germane to main subject or appropriate to accomplishment of objects fairly included therein (Organic Act Porto Rico, § 34).

Porto Rican act is not violative of Organic Act, § 34, if objects contained therein are germane to main subject, or may fairly be regarded as necessary or appropriate to accomplishment of objects included within main subject.

4. **Statutes** ⊂⊃172—Formal re-enactment and publication of statute relating to death penalty, after temporary abolition or suspension by legislative act, held unnecessary (Penal Code Porto Rico, § 202; Acts Porto Rico, 1917, No. 36).

Formal re-enactment and publication of Penal Code Porto Rico, § 202, providing death penalty for murder, *held* not necessary to restore it to effect after temporary abolition or suspension by Acts Porto Rico, 1917, No. 36.

In Error to the Supreme Court of Porto Rico; Ira K. Wells, Judge.

Carlos Arocho was convicted of murder, and he brings error. Affirmed.

Luis Munoz Morales, Frank Antonsanti, and Antonsanti & La Costa, all of San Juan, Porto Rico, for plaintiff in error.

George C. Butte, Atty. Gen., of Porto Rico, for the People of Porto Rico.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. In the Second district court of San Juan, Arocho was, on December 10, 1924, convicted of murder, in the first degree, of a girl under 14 years of age. Under section 202 of the Porto Rican Penal Code, he was, on January 27, 1925, duly sentenced to death. On appeal to the Supreme Court of Porto Rico the judgment was affirmed, in a careful opinion by Chief Justice Toro, concurred in by the entire court.

The case comes here on two assignments of error, raising highly technical contentions,

to the effect that Act No. 36 of November 30, 1917, construed under the limitations of section 34 of the Organic Act, abolished the death penalty.

[1] At the outset, we note that these contentions involve the construction of local statutes; that they were carefully considered by both courts in Porto Rico, and were held untenable. Under these conditions, a case must be pretty plain to warrant this court in holding the local courts in error. Fernandez & Bros. v. Ojeda, 266 U. S. 144, 146, 45 S. Ct. 52, 69 L. Ed. 209; Diaz v. Gonzalez, 261 U. S. 102, 106, 43 S. Ct. 286, 67 L. Ed. 550; Hartman v. Sanchez (C. C. A.) 12 F.(2d) 649, 651, 652.

The pertinent part of section 202 of the Penal Code, as it read prior to the act of 1917 quoted below, is as follows:

"Sec. 202. Every person guilty of murder in the first degree shall suffer death, or if there be extenuating circumstances, shall suffer confinement in the penitentiary for life."

The relevant parts of Act No. 36 of 1917 we quote:

"An act temporarily to abolish the death penalty in Porto Rico; to amend Sections 202 and 219 of the Penal Code and Section 327 of the Code of Criminal Procedure and to repeal Sections 331 to 334, both inclusive, of the latter named Code; to provide for the keeping of special statistics, and for other purposes.

"Be it enacted by the Legislature of Porto Rico:

"Section 1. That the death penalty is abolished in Porto Rico during the time provided by section 6 of this act.

"Section 2. That section 202 of the Penal Code is hereby amended in the manner following:

" 'Section 202. Every person guilty of murder in the first degree shall be punished by confinement in the penitentiary for life, and every person guilty of murder in the second degree shall be punished by imprisonment in the penitentiary for not less than ten years nor more than thirty years. Every person punished by confinement for life shall remain constantly in the penitentiary.' "

"Section 6. This act is to take effect ninety days after its approval and shall be in force until April 30, 1921, and if by that date the Legislative Assembly of Porto Rico shall not have provided otherwise, this act shall stand repealed and the sections amended hereunder shall be in force in their previous form. This act shall have a retroactive effect applicable to convicts sentenced to death and whose sentences have not been executed.

"Section 7. That from and after the date of the approval of this act the Department of Justice shall cause special statistics to be kept of crimes of murder, homicide, attempt to commit murder, and attempt to commit homicide, such statistics to comprise such elements as are essential to determine the course of criminality in such crimes and shall be submitted by the Department of Justice to the Legislative Assembly at each term at the beginning of its regular sessions."

The plaintiff in error now contends that the death penalty was abolished: (1) Because the title does not adequately describe the act; (2) because section 202 of Penal Code was not re-enacted in proper form.

The first contention is grounded on the following paragraph in section 34 of the Organic Act:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

[2] We agree with the Supreme Court of Porto Rico that this proposition cannot be sustained. The title of Act No. 36 clearly shows that its main objects were to abolish temporarily—which means to suspend—the death penalty; to amend named sections of the Penal Code, including a temporary change in section 202; and to provide for statistics, obviously intended to test the results of the experimental suspension of the death penalty; to limit (under section 6) the suspension of the death penalty to April 30, 1921, unless, meantime, the Legislature should otherwise provide. Every part of the act was germane to every other part. The title was adequately and accurately descriptive.

[3] This provision in the Organic Act is similar to provisions found in many of our state Constitutions, and the scope and effect thereof have been freqently ruled upon. Cf. 25 R. C. L. pp. 834, 835, 837. The principles here applicable are well stated in the quotation from 25 R. C. L. 844, in the opinion of the Supreme Court:

"An act is not unconstitutional, because more than one object is contained therein, where the objects are germane to the main subject, or they relate directly or indirectly to the main subject, and have a mutual connection with and are not foreign to the sub-

ject of such act, or when the provisions of the act are of the same nature and come legitimately under one subject." 25 R. C. L. 844.

"Since a statute may include all matters germane to the general subject, it. may include all means which may fairly be regarded as in furtherance of and necessary or appropriate to the accomplishment of the objects that are fairly included within the general subject. An act may contain many provisions and details for the accomplishment of the legislative purpose, and if they legitimately tend to effectuate that object the act is not contrary to the constitutional provision." Id. 846.

"The constitutional provisions are satisfied if the title states in general terms the subject, or, under some of the provisions, the object of the act, and it need not disclose the details of the legislation, or furnish an abstract, synopsis or index of the contents of the act; for the constitutional provisions cannot be so narrowly construed as to require the title of an act, of itself, to contain the entire act. This would make legislation too difficult, and bring it into constant danger of being declared void." Id. 855, 856.

[4] The second assignment, even less plausible, is grounded on the following paragraph from section 34 of the Organic Act:

"No law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length."

It is argued that under Act No. 36, supra, section 202 was amended; that it cannot be revived in its original form without formal re-enactment and publication. But it was not amended within the usual meaning of that term. It was suspended, as we have already held. Sections 2 and 6 of the act must be read together. The case falls, in this regard, under familiar principles, illustrated in Brown v. Barry, 3 U. S. (3 Dall.) 367, 1 L. Ed. 638, in which the Supreme Court said:

"The suspension of an act for a limited time, is not a repeal of it. * * * The manifest intent of the suspending act was, that the act repealed by the repealing act, should continue in force until a day then future, the first of October, 1793. It could have had no other intent. And the intention of the Legislature, when discovered, must prevail, any rule of construction declared by previous acts, to the contrary notwithstanding."

The legislative purpose was perfectly plain; courts must declare the law as they find it.

We find nothing inconsistent in any of the authorities cited in behalf of the plaintiff in error.

The judgment of the Supreme Court of Porto Rico is affirmed.