MUNICIPALITY OF RIO PIEDRAS v. SER-
RA, GARABIS & CO., Inc.

No. 2701.

Circuit Court of Appeals, First Circuit.
Dec. 17, 1932.

On Rehearing June 5, 1933.

Ismael Soldevila and Guerra-Mondragon
& Soldevila, all of San Juan, Puerto Rico,
for appellant.

Philip N. Jones, of Boston, Mass. (Henry G. Molina and La Costa & La Costa, Jr., all of San Juan, Puerto Rico, on the brief), for appellee.

William Cattron Rigby and Fred W. Llewellyn, both of Washington, D. C. (Charles E. Winter, Atty. Gen., and Blanton Winship, of Washington, D. C., of counsel), amici curiæ for the People of Puerto Rico.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an appeal by the Municipality of Rio Piedras from a judgment of the Supreme Court of Puerto Rico holding it liable to Serra, Garabis & Co., Inc., in the amount of about $4,300 for supplies, mostly of a medical and surgical character furnished to the municipal drug store operated by the municipality. The bills sued on amount to $6,072.-33; of this, however, $1,702.25 was admittedly due, the answer stating that it has not been paid solely because of lack of funds. The facts (which are not seriously in controversy) are stated in the opinions of the District Court of San Juan and of the Supreme Court of Puerto Rico. We shall refer only to such of them as are significant on the view which we take of the case; and we shall refer to the parties plaintiff and defendant as they appeared in the lower courts.

The municipality called for bids for supplying its municipal drug store during the fiscal year 1924–1925. The plaintiff's predecessor in business (to whose rights the plaintiff has succeeded and which we shall refer to as the plaintiff) made a bid which was accepted by the municipality. This bid was in substance a price list at which stated articles would be sold when ordered by the municipality. No total amount was contained, either in the call for bids, or in the contract which resulted from the acceptance of the plaintiff's offer. For the fiscal year covered by the bid, the municipality made an appropriation of $4,000 for supplies for the municipal drug store. No question is made as to the liability of the municipality for supplies ordered up to that amount.

After the $4,000 limit had been reached, the municipal druggist continued to give orders to the plaintiff for supplies, and the plaintiff continued to furnish them, to the amount in dispute. The municipality contends that it is not liable for these additional supplies above the amount of the appropriation: (1) Because they were not ordered in accordance with the regulations of the Insular Auditor. (2) Because the municipal druggist had no power to purchase supplies on its account beyond the limit of the appropriation.

The first question is as to our jurisdiction. The amount in controversy is admittedly less than $5,000. We have no jurisdiction, therefore, unless a question arises under a statute of the United States. Judicial Code, § 128 as amended (28 USCA § 225). The Organic Act for Puerto Rico as amended provides that there shall be an auditor appointed by the President who "shall examine, audit, and settle all accounts pertaining to the revenues and receipts, from whatever source, of the government of Porto Rico and of the municipal governments of Porto Rico, * * * and audit, in accordance with law and administrative regulations, all expenditures of funds or property pertaining to or held in trust by the government of Porto Rico or the municipalities or dependencies thereof." 48 USCA § 786.

"The jurisdiction of the auditor over accounts, whether of funds or property, and all vouchers and records pertaining thereto, shall be exclusive. With the approval of the governor, he shall from time to time make and promulgate general or special rules and regulations not inconsistent with law covering the methods of accounting for public funds and property." 48 USCA § 787.

"Municipal accounting shall be governed by regulations to be established by the Auditor of Porto Rico with the approval of the Governor, until which time the present regulations shall continue in force." Laws of 1919, No. 85, p. 714, § 52.

Under these statutes the Auditor of Puerto Rico made detailed regulations covering the purchase of goods and materials by the municipalities. They provide in substance that an order, originating in the purchasing department, shall be sent in triplicate to the Municipal Commissioner of the proper department, that he, after approving the order, shall forward it in triplicate to the Municipal Auditor who, if there be an appropriation available, shall certify the order. The auditor is to keep one of the triplicates and return the other two to the ordering department; one of them to be retained there and the other to be sent to the seller, constituting the valid order for the goods. The regulations further provide: "If any purchase of goods or material be made * * * without complying with the requirements of a previous order therefor, the expenditure shall be considered void and without effect as (far as) payment with

municipal funds is concerned." Section 24 (h).

■ The orders in question were not approved by the Commissioner of Charities for Rio Piedras, nor by the Municipal Auditor. As above stated, they were signed only by the municipal druggist. The defendant municipality, and the insular government, which has been heard as amicus curiæ, contend that the auditor's regulations were valid in law and constituted an implied term of the contract; that therefore the plaintiff is not entitled to recover for supplying goods on orders which did not meet legal requirements. The plaintiff contends that the Insular Auditor appointed by the President has no control over municipal expenditures except in an accounting way; that he cannot undertake to say what contracts a municipality may make, nor to impose conditions upon municipalities with respect to making contracts; and that this lack of power is so clear that no real question is involved under the laws of the United States, and this appeal ought to be dismissed for lack of jurisdiction.

Jurisdiction depends upon the nature of the claim made. The Insular Auditor asserted an authority exercised under a statute of the United States, and the defendant relies on regulations made under such authority. The question so raised is more than a merely colorable one. This court has accordingly jurisdiction to determine the validity of it. And this jurisdiction extends to the whole controversy. Starin v. New York, 115 U. S. 248, 257, 6 S. Ct. 28, 29 L. Ed. 388.

■ We do not think that the Auditor of Puerto Rico had the power to impose conditions on the right of municipalities to enter into contracts, nor to prescribe the formalities with which they could legally do so. The auditor is an accounting officer. He has no mandate to supervise the making of contracts. His duties are confined to methods of accounting and to acting as a check on the disbursement of public moneys, to seeing that money is not paid out illegally from the public funds. The view contended for by the government would in effect put all municipal expenditures in the Island under the dictatorship of this accounting officer—a result so foreign to ideas of local self-government which prevail in this country that we should not accept it unless clearly convinced that it was the legislative intent. A somewhat similar question arose with respect to the right of the Comptroller General of the United States in the making of contracts by departments of the government. The Attorney General advised the Secretary of War that the Comptroller General's right of approval of forms "cannot in any way extend to the contractual obligations, which the parties are entitled freely to negotiate without dictation from the Comptroller General whose function is that of an accounting officer." Opinion of Attorney General to the Secretary of War, June 13, 1930. We agree with these views and with those of the Supreme Court of Puerto Rico on this point. Costas-Purcell v. Municipality of Las Marias, 37 Porto Rico 18. The Insular Auditor's regulations did not constitute part of the contract.

■ The next question is whether the goods were legally bought on the credit of the municipality. This depends on whether the municipal druggist had power to bind the municipality by purchases on its account in excess of the appropriation.

The authority of the municipal druggist is nowhere stated in the record. It is said in the briefs that he was an employee of the city in charge of its drugstore. The goods furnished were admittedly delivered to the drug store which was part of the charity service of the municipality. By the statutes of Puerto Rico: "The municipal director of charities shall have charge of charity services within the respective municipality." Laws 1924, Sp. Sess., No. 11, p. 92, § 31. "He shall see to the enforcement of all ordinances and resolutions relative to matters comprised in the denomination of his office; shall certify payments to be made by his department out of budgetary appropriations." "The municipal auditor shall have all the powers, functions and duties, with regard to the municipality, as appertain to the Auditor of Porto Rico, with regard to the Insular Government, subject to the provisions of the Organic Act and to the regulations issued by the said Auditor of Porto Rico." Laws of 1924, Sp. Sess., No. 11, p. 96, § 42.

Orders on the plaintiff previous to those in dispute were signed by the director of municipal charities. He was forbidden to make purchases beyond the amount of the available appropriation; and his testimony makes it clear that it was his practice never to do so. The evidence is "that this is the only instance in which the orders were made differently." It is clear that the orders in question were of unusual character.

The burden of proof is on the plaintiff to show that the person by whom the goods were ordered had power to bind the municipality. It does not appear that the municipal druggist had such power. The Supreme Court of

Puerto Rico did not so rule. It held: "That fact of the receipt of said goods created, under the contract the obligation to pay."

■■ The final question is whether, the goods having been received and used in the municipal drugstore, and it being impossible to return them or to put the plaintiff in status quo, the municipality is estopped from denying its obligation to pay. Under the common law as laid down in this country there would clearly be no such obligation.

"The decisive answer to the whole contention is that the doctrine [of estoppel] relied on by him [the plaintiff] has no application where a person enters into a contract with a public officer who undertakes to act for and to bind a municipal corporation or other body politic. Such a person is bound, at his peril, to ascertain the extent of the authority of the public officer with whom he deals. In such a case the money pledged for the payment of the contractor is the money of the public, or of an ascertained portion of the public; and the public is not estopped by a violation of duty on the part of public officials, no matter how many officials may have been concerned in it, and no matter how long it may have continued." Loring, J., Wormstead v. City of Lynn, 184 Mass. 425, at page 428, 68 N. E. 841, 842. To same effect, City of Astoria v. American La France Fire Engine Co., 225 F. 21, at page 26 (C. C. A. 9); Aetna Life Insurance Co. v. Lyon County (C. C.) 44 F. 329, 343, 344; City of Bangor v. Ridley, 117 Me. 297, 104 A. 230; McGillivray, Municipal Corporations (2d Ed.) volume 3, § 1268; Parr v. President, etc., of Village of Greenbush, 72 N. Y. 463, 472.

We think it can be said that estoppel can never be invoked against the public to create power in an officer who purported to act on behalf of the public without authority to do so. Estoppel is rarely allowed against public bodies, and only when the officer, whose conduct is relied on as having created it, had general power to act for the public in the premises, but exceeded his express authority. Town of Humboldt v. Schoen, 168 Wis. 414, 170 N. W. 250, at page 252.

The only doubtful question on this branch of the case is whether it was open to the Supreme Court of Puerto Rico to adopt a different rule as to estoppel. We do not understand the Supreme Court of Puerto Rico to have placed its decision on the principles of the civil law as opposed to those of the common law. It cites American decisions on the point. It has not been argued that the civil law is in this respect different from the common law. The rights and powers of municipalities in Puerto Rico are largely governed by statutes, which in many instances follow the general lines of American legislation. We are, therefore, of opinion that we ought to apply what appear to be general principles, and to say that the municipality of Rio Piedras is not estopped to set up the lack of authority on the part of the municipal druggist by whom the goods were ordered.

We may add that, if we felt free to deal with the case on the equities, we should still reach the same result. We think it obvious that a person employed by a municipality to conduct its municipal drug store has no broad and unlimited power to make purchases on behalf of the municipality for supplies largely in excess of the amount appropriated for such purposes.

It follows that the decree of the Supreme Court of Puerto Rico must be reversed, and the case remanded to that court, with instructions to enter judgment for the defendant.

The decree of the Supreme Court of Puerto Rico is reversed, and the case is remanded to that court, with instructions to enter judgment for the defendant; the appellant recovers costs of appeal.

### On Rehearing.

### Statement of Case.

This is an appeal in an action at law from a judgment of the Supreme Court of Puerto Rico in favor of the plaintiff. It appears that on May 25, 1925, the plaintiff bought the business and assets of a partnership known as Serra, Garabis & Co., Limited; that among the assets purchased was a claim of $6,322.36 alleged to be due for medicines and pharmaceutical products sold by the partnership to the defendant municipality; that this item was made up of six different items sold and delivered by the partnership to the defendant, as follows: (1) On November 23, 1924, in the amount of $1,700; (2) on December 19, 1924, in the amount of $2.25; (3) on December 19, 1924, in the amount of $721.94; (4) on January 16, 1925, in the amount of $872; (5) on February 26, 1925, in the amount of $1,065.25; and (6) on March 26, 1925, in the amount of $1,710.87.

After setting out the above, the complaint alleged that "the said municipality bound itself to pay the value of said medicines, drugs and pharmaceutical products upon presentation of the corresponding bill in duplicate,

signed by Serra, Garabis & Co., Ltd., accompanied by the order of the municipality, covering the corresponding items of said bill"; and "that said partnership, Serra, Garabis & Co., Ltd., presented in duplicate to the said municipality, the bill corresponding to *each of the orders* issued by said municipality attaching the *order of said municipality* to same on the same dates on which the different items were delivered as appears from the attached bills and on the dates [above] specified, * * * and requested payment from said municipality"; and that the plaintiff as the owner of the credit had also demanded payment of the municipality which refused to make payment either to the partnership or to the plaintiff.

In its answer the defendant admitted that it owed the plaintiff the items of $1,700 and $2.25, but denied that it ordered or owed for the remaining items, and alleged that the bid for supplies of medicines called for by a resolution approved for the fiscal year 1924–25 was awarded to the partnership Serra, Garabis & Co., Limited, on condition that the medicines were to be supplied against orders signed by the municipal director of charities· and that the municipal director did not sign orders for any of the items above specified except the two items which it admitted were due and owing the plaintiff; and "that after the shipment [payment] of the two orders" for the admitted items "there was no entry [money] in the municipal budget for the payment of any other medicines"; and that the municipality itself was without authority to give orders in excess of the appropriation, for to do so would be contrary to the Organic Act and the laws of Puerto Rico.

At the trial in the District Court for San Juan it appeared that Serra, Garabis & Co., Limited, sold all its business and assets to the plaintiff; that on May 21, 1924, the municipality, by a resolution of its assembly, called for bids for medicines that might be needed at its drug store for the fiscal year 1924–25; that the award was made to the partnership of Serra, Garabis & Co., Limited, and that the clauses of the resolution calling for bids and covering their delivery and payment were sections 5 and 6. They read as follows:

"Section 5. The bidder to whom the award is made shall, within four days after the date of the award, deliver the medicines and drugs which may be ordered from the list appearing in Section [paragraph] 3 of this resolution and shall be entitled to payment thereof in the full amount immediately upon receipt by the municipal druggist and if in accordance with the respective bills.

"Section 6. The successful bidder is bound to furnish all the medicines which may be needed in the municipal drugstore until the end of the corresponding fiscal year as ordered in accordance with the terms and prices stipulated by himself in his proposal."

It further appeared that the bid contained a list of certain medicines and supplies which the partnership agreed to furnish and the price of each article; that the documents or so-called orders for the four items of medicines here in dispute each bore a certificate signed by the municipal druggist in which he stated, "I certify that the articles listed herein are needed for use by this dependency"; that these documents were not signed or approved by the director of charities, or by the municipal auditor; that all orders for medicines and supplies given to the partnership of Serra, Garabis & Co., Limited, prior to the four items in dispute, had upon them, in addition to the certificate of the druggist, the approval of the municipal director of charities, who signed his name with his official title. These prior orders also bore the certificate of the municipal auditor, which stated in substance that after deducting the total amounts of all orders previously certified by him there was a given amount of credit available in the appropriation for the payment of the articles listed therein; that the documents or orders for the four items in dispute were filled by Serra, Garabis & Co., Limited, and received by the municipal druggist; that these medicines and supplies were used in the hospital and the municipal drug store; that the four documents or orders here in dispute were not presented to the municipal director of charities until the end of the fiscal year 1924–25, when he refused to sign them, stating that they were not made in accordance with law and the regulations, and that there were no funds.

The budget of the municipality for the fiscal year 1924–25 was approved June 11, 1924, and showed an appropriation for medicines, etc., for indigent patients for the fiscal year· of $4,000. The registry book of orders of the municipality, besides showing the appropriation of $4,000 for medicines, showed entries in the amount of the different orders and warrants of payment against that appropriation, made prior to the date of the items here in question. It also disclosed that the last two entries against the $4,000 appropriation were the previously mentioned orders for $1,700

and $2.25 and that they exhausted the appropriation.

In the District Court of San Juan it was held that, inasmuch as the resolution did not state who shall order the medicines, "the plaintiff or its assignor had perfect right to believe that the sole signature of the municipal druggist was sufficient," and that "if the resolution [the contract] is in conflict with the regulations of the Auditor and such circumstance would render it invalid, the municipality could not acquire and use the medicines covered by a void contract and then plead the invalidity of the contract as a defense in this action thereon"; that "the municipality would necessarily have to pay for the benefit (medicines) received"; and that it was no defense to the action that there were not sufficient funds to cover these orders; that these debts should be approved and included in the next budget as a preferred payment; and entered judgment for the plaintiff for $6,072.33 and costs.

In the Supreme Court of Puerto Rico it was held (1) that under clauses 5 and 6 of the resolution the municipality became bound to pay for the medicines and drugs "immediately upon being received in order by the municipal druggist"; that their receipt created under the contract the obligation to pay. In other words, although the documents calling for the delivery of the medicines and supplies were not signed or approved by the municipal director of charities, they were the orders of the municipality and that, upon receipt of the goods therein itemized there was created an obligation requiring the municipality to pay; and that this was so without evidence showing any authority in the municipal druggist to bind the municipality by an order, if his signing a certificate that the goods were needed for the municipal drug store could be regarded as an order. (2) That the fact that the appropriation in the budget for the fiscal year was exhausted and there were no funds to meet the items in question was not a defense; that the bid having been awarded "it is up to the municipality to provide funds with which to cover the delivery of the medicines"; that paragraph 26, section 34, of the Organic Act (39 Stat. 960 [48 USCA § 841]), which provides, "No appropriation shall be made, nor any expenditure authorized by the legislature, whereby the expenditure of the Government of Porto Rico during any fiscal year shall exceed the total revenue then provided for by law and applicable for such appropriation or expenditure," was without application; that the limitation there imposed is upon the Legislature, not the municipality; that section 9 of the municipal law, as amended by Law No. 60 (Laws of 1921, p. 436), "gives the municipalities full legislative and administrative powers in all matters of purely local nature and connected with public works, education, charity, public order and security"; that "the Municipality of Rio Piedras, when the Assembly approved the Resolution and bids were called, was acting within its powers in conformity with the statutory provision aforesaid"; and that "the contract for the furnishing of medicines, drugs and other supplies, was valid and perfect for the contractor, as it was entered into by means of a resolution and bids"; and that if the municipality does not provide the necessary amount in its budget "there is not one sole reason, legal or moral, whereby the contractor should suffer the consequences"; that section 8 of the municipal law (Laws of 1919, p. 690) provides that all expenses incurred by the government of each municipality for the needs of its offices and departments shall be paid by those municipalities, which shall have power to provide funds therefor, and if the "municipality, disregarding this statutory provision does not provide funds, it cannot now allege its own fault in its behalf"; and (3) in discussing the regulations of the auditor of Puerto Rico relating to municipal accounting and their "influence on the validity of contracts," the court held that "the resolution and the bid had a positive influence on the validity of the contract"; that a "strict compliance with the regulations for municipal accounting of the Auditor of Porto Rico" had "no such influence"; that "the resolution and the bid suffice to make the contract in question valid and effective giving rise to rights and obligations among the parties thereto. Once the bid is held and the award made, the right to have the other party to the contract send the medicines and supplies and the duty or obligation to pay for them originates for the municipality; and for the party receiving the award, the duty to deliver the goods or materials, and the right to receive payment therefor. The only limitation arising from *the contract itself* is that *delivery* be made to the municipal druggist, and that the *medicines, drugs and supplies be needed* by the municipal drugstore. The regulations for accounting affect the municipal drugstore and to how the accountancy must be kept by the municipalities, but does not make the contracts more or less valid." That that paragraph of section 20 of the Organic Act (39 Stat. 957 [48 USCA § 787]) which provides that, "with the

approval of the governor, he shall from time to time make and promulgate general or special rules and regulations not inconsistent with law covering the methods of accounting for public funds and property, and funds and property held in trust by the government or any of its branches," limits the power of the insular auditor in making regulations to "methods of accounting" and that they be "not inconsistent with law," and that municipalities duly constituted and acting within the scope of their authority have all the rights of contract that an individual may have and that a person who makes a contract with a municipality is not required first to obtain the permission of the auditor of Porto Rico to make the same; and (4) that the medicines and supplies in question having been delivered to the municipal drugstore and consumed, the municipality is estopped from alleging that the contract, so far as it concerns the items in dispute, and the obligation of the defendant to pay therefor, is ineffective and void "because the orders did not bear the signature of the director of charities."

This opinion confirming the judgment of the District Court having been handed down, the defendant filed a motion for rehearing wherein it complained that the court erred in failing to give proper consideration and effect to paragraph 4 of its answer, wherein it alleged that the medicines were to be furnished against orders from the director of charities; that, under the municipal laws and regulations of the insular auditor, the director of charities was the person to make or approve orders for furnishing medicines and supplies under the resolution and bid, and that it had presented that question to the court in its brief and arguments; that section 31 of the Laws of 1924 (Laws of 1924, p. 93), which formed a part of the contract, provided that the municipal director of charities shall have under his control all services relating to charities within his respective municipality, and, therefore, he was the one with authority to order the medicines; that no statute conferred that power on the municipal druggist; that he was not an executive officer in charge of a municipal department and was not even mentioned in the municipal law; and that each sale contract executed under the general agreement for the furnishing of the medicines had to be made by the duly authorized municipal officer; and that they based this contention, not only on the municipal law, but on the municipal regulations promulgated by the insular auditor approved by the Governor, which, they asserted, had the same force as law except so far as

they might be inconsistent therewith; that the regulations were a part of the contract and as effective as though they had been copied in the general supply contract; that the court should have but had not determined whether these regulations were void or not; that, if they were valid, they governed and were a part of the supply contract; and requested that the court determine the question. The motion for reconsideration was denied without opinion and the judgment of the District Court, which awarded the plaintiff $6,-072.33 plus costs and expenses, was affirmed.

BINGHAM, Circuit Judge (after stating the facts as above).

 Our authority to entertain this appeal is questioned by the plaintiff's motion to dismiss for want of jurisdiction. Section 128 of the Judicial Code, as amended by the Judiciary Act of 1925, § 1 (43 Stat. 936 [28 US CA § 225]), so far as it concerns the appellate jurisdiction of this court to review by appeal or writ of error final decisions of the Supreme Court of Puerto Rico, reads as follows:

"Sec. 128 (a) The circuit courts of appeal shall have appellate jurisdiction to review by appeal or writ of error final decisions—
* * *

"Fourth. In the Supreme Courts of the Territory of Hawaii and of Porto Rico, in all civil cases, civil or criminal, wherein the Constitution or a statute or treaty of the United States or any authority exercised thereunder is involved; in all other civil cases wherein the value in controversy, exclusive of interest and costs, exceeds $5,000, and in all habeas corpus proceedings."

The judgment from which this appeal is taken is for $6,072.33 exclusive of interest and costs, and presumptively this court has jurisdiction of this appeal on the ground that it is a cause wherein the value in controversy, exclusive of interest and costs, exceeds $5,000. But it must be borne in mind that "the matter in dispute, on which our jurisdiction depends, is the matter in dispute 'between the parties as the case stands upon the writ of error' or appeal; that is to say, as it stands in this court." Hilton v. Dickinson, 108 U. S. 165, 175, 2 S. Ct. 424, 431, 27 L. Ed. 688.

"Under this rule we have jurisdiction of a writ of error or appeal *by a plaintiff* below when he sues for as much as or more than our jurisdiction requires and recovers nothing, or recovers only a sum which, being deducted from the amount or value sued for, leaves a sum equal to or more than our jurisdictional

limit, for which he failed to get a judgment or decree." Hilton. v. Dickinson, supra.

And ordinarily "we have jurisdiction of a writ of error or appeal *by a defendant* when the recovery against him is as much in amount or value as is required to bring a case here." Hilton v. Dickinson, supra.

But where it is shown by the record that the amount of the judgment is not the amount in controversy, then the amount, ascertained as the sum in dispute, is the amount which determines our jurisdiction. Thus in Tinstman v. First National Bank, 100 U. S. 6, 25 L. Ed. 530, where it appeared in the record by an agreed statement of facts that the defendant admitted a part of the plaintiff's claim and the balance in dispute was less than the jurisdictional amount, it was held that the court from which the writ of error was taken was without jurisdiction. And in Jenness v. Citizens' National Bank, 110 U. S. 52, 3 S. Ct. 425, 28 L. Ed. 67, the facts were the same as in the case now before us. There the judgment below against the defendant was for an amount sufficient to give jurisdiction to the court from which the writ of error issued, but as the record affirmatively showed that after deducting from the judgment the amount admitted and not in dispute below, there remained less than the jurisdictional sum, the court was without jurisdiction. See to the same effect Wabash, St. Louis, etc., R. Co. v. Knox, 110 U. S. 304, 3 S. Ct. 638, 28 L. Ed. 155.

This court, therefore, is without jurisdiction on the ground of the amount in controversy, although it would undoubtedly have had jurisdiction if the defendant had not admitted in its answer that $1,702.25 of the $6,072.33 was due the plaintiff, and had it not, in its petition for appeal, expressly excluded "from the appeal applied for, the amount of $1,702.25," which it had admitted it owed the plaintiff.

The defendant, however, contends that we have jurisdiction of this appeal on the ground that it is a case wherein a statute of the United States (the Organic Act of Puerto Rico) is involved. The provision of the Organic Act upon which it relies in support of its contention is found in section 20 of the Organic Act (39 Stat. 957), as amended in 1924 (43 Stat. 631 [48 USCA §§ 786, 787]), the pertinent part of which reads:

"There shall be appointed by the President an auditor, * * * who shall examine, audit, and settle all accounts pertaining to the *revenues and receipts,* from whatever source, of the government of Porto Rico and of the municipal governments of Porto Rico, including public trust funds and funds derived from bond issues; and audit, in accordance with law and administrative regulations, *all expenditures* of funds or property pertaining to or held in trust by the government of Porto Rico or the municipalities or dependencies thereof. He shall perform a like duty with respect to all government branches. * * *

"The jurisdiction of the auditor over accounts, whether of funds or property, and all vouchers and records pertaining thereto, shall be exclusive. With the approval of the governor, he shall from time to time make and promulgate general or special rules and regulations not inconsistent with law *covering the methods of accounting* for public funds and property, and funds and property held in trust by the government or any of its branches."

And section 52 of the Municipal Law of Puerto Rico (see Act No. 85, Laws of 1919 of Puerto. Rico, p. 714) provides:

"Section 52. That municipal accounting shall be governed by regulations to be established by the Auditor of Porto Rico with the approval of the Governor, until which time the present regulations shall continue in force."

This last section simply says that municipal accounting shall be governed by regulations to be established by the Auditor of Puerto Rico with the approval of the Governor. It does not confer or define his authority in making regulations.

Acting under section 20 of the Organic Act, which confers such authority, the insular auditor, with the approval of the Governor, promulgated the following regulations for municipal accounting:

"Section 24. (a) *No purchase* of goods and materials for the different departments or dependencies of the municipality *shall be made* without a previous written order in triplicate (Form No. 18) made out to the * * * [seller], in which all items should be in detail, and their value. This order shall be sent to the Municipal Commissioner of the corresponding department, who shall, should he deem the expenditure necessary, approve the same, and shall forward said order, in triplicate, to the Municipal Auditor, who, should there be any credit available for the expenditure (taking into consideration the orders previously authorized by him, for the amount of which orders he shall not yet have issued warrant of payment), shall sign the certificate at the foot of said order, or other-

wise he shall so state it in the said certificate. The Municipal Auditor shall retain the duplicate of each order, returning the original and the triplicate to the municipal dependency in which it originated, and this dependency shall retain the triplicate, forwarding the original to the * ° ° [seller] so that he may furnish the goods or materials referred to in the order. When the furnishing of goods or materials has been contracted for, reference shall be made to the contract on each order issued by virtue thereof."

"(h) If any purchase of goods or materials be made or any work be executed or service be rendered without complying with the requirement of the previous order therefor, the expenditure shall be considered void and without effect [so far] as payment with municipal funds is concerned. However, in case of vis major, emergency or urgent necessity, and when a delay in preparing the order may prejudice the interests of the municipality and its inhabitants, purchases may be made direct without the order, and the corresponding Municipal Commissioner shall certify as to the special circumstances which compelled him to make the expenditure without the corresponding order.

"(i) No previous order will be required for the dispatch of medicines to the indigent patients through a prescription; it being understood, however, that an order will be necessary (Form No. 18) to furnish the municipal drugstore with supplies."

The defendant contends that the plaintiff's assignor, Serra, Garabis & Co., Limited, on the acceptance of its bid of June 11, 1924, agreed to furnish the Municipality of Rio Piedras during the fiscal year 1924-25, as and when orders were received, the medicines and supplies needed for its drugstore set out in the list submitted and at the respective prices there named; and the municipality, on its part, through its resolution and acceptance of the bid, agreed to buy medicines and supplies from the bidder of the nature and at the prices stated in the list, to order the same as needed during the year, and make payment upon receipt of the goods by the municipal drugstore; that the general contract, made up of the resolution, bid, and acceptance, was in the nature of an installment contract calling for contracts of sale and purchase from time to time and when ordered during the given period; that the words "which may be ordered," in section 5 of the resolution, and "as ordered," in section 6 of the resolution, mean when and as ordered by the municipality through its authorized officer; that the regulations of the insular auditor are valid and have the force of law and by their terms require that all purchases of goods by a municipality for one of its departments shall be based upon a previous written order, approved, in this instance, by the commissioner or director of charities, who, under section 42 of the Municipal Law of Puerto Rico of 1924, is given charge over "the officers and services corresponding to his department" and is required to "see to the enforcement of all *ordinances and resolutions* relative to matters comprised in the denomination of his office," and that, inasmuch as none of the items for medicines and supplies here in question were furnished on a previous order approved by the commissioner of charities and certified by the municipal auditor, the municipality could not be held under the general contract because of this failure; that the regulation requiring a previous order approved by the commissioner of charities and certified by the municipal auditor, being one promulgated by the insular auditor with the approval of the Governor, under section 20 of the Organic Act (a federal statute), presents a federal question and, whether sustained or not, a question material to a decision of the case, which confers jurisdiction on this court to entertain the appeal.

The question of the validity of the regulations—that is, whether they were within the authority conferred upon the insular auditor by section 20 of the Organic Act—and their effect upon the general contract embodied in the resolution and bid, was presented to the Supreme Court of Puerto Rico before its decision in this case was rendered, and thereafter on a motion for rehearing, which was denied without opinion.

In the motion for rehearing counsel for the defendant contended that the Supreme Court of Puerto Rico, in its opinion, had failed to pass upon the question and determine whether the regulations of the insular auditor were valid or invalid; and, while it must be confessed that it is difficult to ascertain from the opinion exactly what its conclusion upon this question was, an examination of it indicates that the court did not pass upon the question of their validity, that is, whether section 20 of the Organic Act conferred authority on the insular auditor to make regulations of the scope and breadth of the regulations in question, but held that, construing the language of the regulations themselves, they simply concerned the auditing of municipal accounts and did not relate to or affect the terms of the general contract

embodied in the resolution and bid. But a mere reading of the regulations discloses that they are not limited and were not intended to be limited to prescribing rules covering methods of accounting. On the contrary, they largely relate to and affect contracts for the purchase of goods by a municipality and provide that no purchase by it of goods shall be made, or, if made, be valid, without a previous written order approved by the commissioner of charities and certified by the municipal auditor. They make such an order essential to a valid contract of purchase, and, as applied to this case, the defendant claims, they make such an order essential to any installment purchases of medicines made from time to time under the general contract embodied in the resolution and bid. We think this is the plain meaning of the regulations and the application intended to be made of them, and, such being the case, the question presented is whether, under section 20 of the Organic Act, the insular auditor was authorized to make regulations of this nature and scope. It is obvious that the decision of this question involves the construction of a federal statute and thus presents a federal question and one of a substantial nature, giving us jurisdiction over this appeal, for, if regulations of the breadth and scope above stated are sustained, the order or orders called for thereby, not having been given for the items here in controversy, no action on the contract could be maintained. Alberto v. Nicolas, 279 U. S. 139, 143, 49 S. Ct. 317, 73 L. Ed. 642.

Does section 20 of the Organic Act authorize the insular auditor, with the approval of the Governor, to make regulations affecting the terms and validity of municipal contracts? In considering this question in our previous opinion we held that it did not. We there said: "We do not think that the Auditor of Puerto Rico had the power to impose conditions on the right of municipalities to enter into contracts, nor to prescribe the formalities with which they could legally do so." That the auditor exceeded the scope of his authority in imposing the conditions that he did in the regulations on the right of municipalities to contract is shown by the language in section 20 from which he derives his authority. It says that the auditor "shall examine, audit, and settle all accounts pertaining to the *revenues and receipts,* from whatever source, of the government of Porto Rico and of the municipal governments of Porto Rico." The words "revenues and receipts" there used mean that he should examine and audit the sums due to and those received by

the municipalities. On the other hand, later in that section, he is directed to "audit, in accordance with law and administrative regulations, all *expenditure* of funds or property." This latter clause defines his duties with reference to expenditures and limits them to auditing and has particular application to the case now before us, for it relates to municipal expenditures. The clause of the section giving him power to make rules and regulations specifies that they shall not be inconsistent with law and limits them to covering or embracing *methods of accounting.*

Clearly the regulations in question, construed as the defendant contends they should be and as they avowedly read, are not limited to methods of accounting but extend to and prescribe terms and conditions for making municipal contracts. In this respect they are invalid, being unauthorized by section 20. We therefore hold that previous orders approved by the commissioner of charities and certified to by the municipal auditor as prescribed by the regulations are not essential to the installment purchases under the general contract and that the mere failure to comply with the regulations in these particulars was not a defense to the action on the contract.

The question remains whether, construing the general contract embodied in the resolution and bid with reference to the provisions of the municipal laws of Puerto Rico, the municipality was, under the facts found, liable for the installments of the medicines specified in the items here in dispute. This involves a consideration of the merits of the case independently of the federal question above considered.

But this question the plaintiff contends does not come within the scope of our review; that, where our jurisdiction over a writ of error to or appeal from the Supreme Court of Puerto Rico is based on the ground that it involves a federal question, our scope of review is limited to the federal question; and that, having disposed of it, we cannot consider any other question the decision of which is material to a disposition of the case. In other words, that our scope of review under section 128 (a), Fourth, of the Judicial Code, 28 USCA § 225 (a) (4), of a case wherein a federal question is involved on writ of error or appeal from a final decision of the Supreme Court of Puerto Rico is limited, although section 128 (a), Fourth, does not in terms say so, the same as the scope of review by the Supreme Court of the United States is on a writ of error to a state court in a case

involving a federal question—that is, to a review of the federal question only. We cannot accede to this proposition.

The scope of review by the Supreme Court of the United States on writ of error to a state court is thus limited because "the courts of a state have the supreme power to interpret and declare the written and unwritten laws of the state," while the power of the Supreme Court of the United States "to review decisions of state courts is limited to their decisions on federal questions." Brinkerhoff-Faris Trust & Sav. Co. v. Hill, 281 U. S. 673, 680, 50 S. Ct. 451, 454, 74 L. Ed. 1107; Ownbey v. Morgan, 256 U. S. 94, 111, 41 S. Ct. 433, 65 L. Ed. 837, 17 A. L. R. 873. "The mere fact that a state court has rendered an erroneous decision on a question of state law * * * does not give rise to a claim under the Fourteenth Amendment or otherwise confer appellate jurisdiction on this court" (the United States Supreme Court). Brinkerhoff-Faris Trust & Sav. Co. v. Hill, supra.

In this respect there is a wide distinction between the scope of review on writ of error to or appeal from the Supreme Court of Puerto Rico involving a federal question, and one from the highest court of a state involving a like question. This distinction is well recognized and was recognized in section 244 of the Judicial Code (Act of March 3, 1911, c. 231, 36 Stat. 1157 [48 USCA § 864 note]). That section provided that "writs of error and appeals from the final judgments and decrees of the Supreme Court of, and the United States district court for, Porto Rico" could be taken and prosecuted in the Supreme Court of the United States in any case involving a federal question. It did not limit the scope of review to that exercised by the Supreme Court of the United States on writs of error to a state court. But in 1915, in section 2 of the Act of January 28, 1915 (38 Stat. 803), section 244 and section 246 of the Judicial Code approved March 3, 1911, were combined and amended in section 246, and by that section writs of error to and appeals from the final judgments and decrees of the Supreme Court of Puerto Rico, when prosecuted in the Supreme Court of the United States, were expressly limited to the same class of cases in which writs of error and appeals from the final judgments and decrees of the highest court of a state could be had under the provisions of section 237 (28 USCA § 344). So that, under section 246 of the Judicial Code, as it was made to read by the Act of January 28, 1915, its scope of review was expressly confined to the federal question. These statutes demonstrate that the scope of review of the decisions of the Supreme Court of Puerto Rico depends upon the discretion of Congress in conferring the right of review and that there is no such reason for limiting the review of decisions of the Supreme Court of Puerto Rico as in the case of review of the decisions of the highest court of a state by a federal court. And Congress, in section 128 (a), Fourth, in conferring jurisdiction on the Court of Appeals for this Circuit to review the final decisions of the Supreme Court of Puerto Rico, placed no such limitation upon its scope of review as it did in section 246 of the Judicial Code, as amended by section 2 of the Act of January 28, 1915, but left it unrestricted, the same as it did that of the Supreme Court of the United States under section 244 of the Judicial Code, as amended by the Act of March 3, 1911 (chapter 231, 36 Stat. 1157).

While this court, in reviewing decisions of the Supreme Court of Puerto Rico since the enactment of section 128 (a), Fourth, in 1925 (43 Stat. 936), has not expressly passed upon the scope of its review, it has had before it cases from that court where its jurisdiction depended upon a federal question and has consistently determined not only the federal question but questions of local law affecting the merits of the case. Arocho v. People of Porto Rico (C. C. A.) 16 F.(2d) 90, decided December 23, 1926; Gerardino v. People of Porto Rico (C. C. A.) 29 F.(2d) 517, decided November 27, 1928; Carbonell v. People of Porto Rico (C. C. A.) 27 F.(2d) 253, decided June 28, 1928; Martinez v. People of Porto Rico (C. C. A.) 46 F.(2d) 427, decided January 2, 1931; Barcelo v. Saldana (C. C. A.) 54 F.(2d) 852, 857, decided December 23, 1931.

In the last case cited this court passed on the local questions as well as the federal one involved and held that the decision of the Supreme Court of Puerto Rico as to the local questions was not so clearly wrong as to warrant reversal and affirmed its decision. In the last paragraph of this opinion it was stated: "In any event, the organization and control of political parties in Porto Rico, in so far as any justiciable questions are involved, that do not concern the Organic Act, present questions which are of a purely local nature, of which this court has no jurisdiction on this appeal." It is this clause upon which the plaintiff relies and contends that our scope of review, where our jurisdiction depends upon

a federal question, is limited to the federal question. If this clause, the subject-matter of which is the organization and control of political parties in Puerto Rico, relates to other than purely political questions, it was inadvertently made, for we had jurisdiction to review questions of local law and did review and determine them in that case.

As above stated, it cannot reasonably be contended that the people of Puerto Rico stand like a state and that questions of local law decided by the Supreme Court of Puerto Rico are not subject to review here the same as like questions of law decided by a state court are not subject to review by a federal court. This court since 1915 has repeatedly decided questions of local law while reviewing cases from the Supreme Court of Puerto Rico involving $5,000 or over. Congress could not have conferred such power upon us if the people of Puerto Rico and its courts stood in the same relationship as a state and its courts to the federal government and its courts. The people of Puerto Rico and its courts are but the creatures of Congress—not so a state court and its agencies.

We will now consider the merits of the case with relation to the provisions of the local law. In so doing, we will view the matter from two standpoints: One, that the suit was brought on the general contract as embodied in the resolution and bid; the other, that the action is one in quasi-contract to recover benefits conferred. It is not exactly clear that the complaint presents the matter except in the first aspect, but both the courts below seem to have dealt with the case as though both views were embodied in the complaint.

Treating the case as one brought on the contract the Supreme Court regarded the liability of the defendant municipality as established without any evidence or finding that the municipal druggist had authority to bind the municipality by an order, if his signing the certificate that the goods were needed by the municipal drug store could be regarded as an order.

Section 5 of the resolution, which, with the acceptance of the bid, constitutes the general contract, provides that the bidder shall deliver the medicines and drugs which shall "be ordered" from the list, and section 6 that he shall be bound to furnish the medicines "as ordered." The general contract, therefore, contemplated that medicines would from time to time, and as needed during the fiscal year, be ordered by the municipality and that an order by it would be necessary before the

seller could be charged with a breach of contract for failure to deliver the same and also before the municipality could be required to pay for the medicines; and, as the municipality was a corporation and could act only through a duly authorized agent, that the orders would be given by such agent.

Act No. 11 of the Laws of Puerto Rico of 1924, in section 31, provides, that "the municipal director of charities shall have charge of charity services within the respective municipality"; and in section 42, that "each of the executive officers [of which the municipal director of charities is one] shall have under his charge the officers and services corresponding to his department"; that "he shall appoint his own employees"; that "he shall see to the enforcement of all *ordinances and resolutions* relative to matters comprised in the denomination of his office"; and that he "shall certify payments to be made by his department out of the budgetary appropriations."

It thus appears that the municipal director of charities is the person authorized to represent the municipality with relation to matters in his department and is charged with enforcement of all ordinances and resolutions relating to such matters; and it necessarily follows, in the absence of any showing to the contrary, that he was the agent of the municipality possessing authority to bind it in giving orders for medicines for the charity department over which he was the executive officer. And as none of the documents or so-called orders covering the items here in dispute were approved or signed by him, the municipality cannot be held under the general contract for such items. This is undoubtedly a question of local law for it involves the construction of the provisions of sections 31 and 42 of the municipal law and their application to the contract in question. But the Supreme Court did not advert to these provisions of the municipal law or apply them in the interpretation of the contract, and if it had and reached a different conclusion, it would have been clearly wrong.

Neither was there any evidence in this case from which it could be found that the municipality was estopped to deny that the municipal druggist had authority to give binding orders for the items in question, even assuming that the municipality, as a matter of law, might be estopped. On the contrary the evidence shows that all the orders given the plaintiff previous to the items in dispute were orders approved in writing by the municipal

director of charities and certified to by the signature of the municipal auditor. This certainly did not mislead or give the plaintiff reason to believe that the municipal druggist had authority to give orders binding the municipality.' And, in our previous opinion, we held that the municipality was not estopped to deny the authority of the municipal druggist to give a binding order; and that it devolved upon the party seeking to charge a municipality to ascertain the authority of the person with whom he was dealing to bind the municipality.

Viewing the complaint as one in quasi contract, the question is whether the plaintiff can recover the reasonable value of the medicines delivered at the municipal drugstore as for benefits conferred on the municipality, independently of the contract. This question must be considered with reference to the facts in the case. From these it appears that the plaintiff's assignor furnished the items of medicines in question to the municipal druggist without an order or request from the director of charities, the agent of the municipality authorized to give such order or make such request; and that the director of charities, so far as appears, had no knowledge that the medicines had been furnished until the end of the fiscal year, when he repudiated the transaction and when the medicines and supplies had been consumed and could not be returned. Such question has been repeatedly determined in the negative. If the medicines were in existence and in the defendant's possession so that they might be returned, it could be required to restore them or to pay their reasonable value—but that is not this case.

From what has been said it follows that the plaintiff is entitled to judgment for the $1,702.25, which the defendant admitted in its answer was due the plaintiff; that as to the balance of $4,370.08, for which the court below also gave the plaintiff judgment, the judgment of that court must be vacated, and, as our previous order in this case was erroneous, it must be vacated.

Our previous order is vacated, and it is further ordered:

The judgment of the Supreme Court of Puerto Rico is affirmed so far as it gives judgment for the plaintiff in the sum of $1,702.25; otherwise it is vacated. The defendant-appellant recovers costs in this court.