## ALBERTO *v.* NICOLAS.

No. 364. Argued March 6, 1929.—Decided April 8, 1929.

140

*Mr. Wm. Cattron Rigby,* with whom *Messrs. John A. Hull,* Judge Advocate General, U. S. A., and *Delfin Jaranilla,* Attorney General of the Philippine Islands, were on the brief, for petitioner.

*Mr. Henry J. Richardson,* with whom *Messrs. Harold R. Young* and *Pedro Guevaro* were on the brief, for respondent.

Mr. Chief Justice Taft delivered the opinion of the Court.

This is a certiorari to the Supreme Court of the Philippine Islands, to bring here for review an order of ouster in *quo warranto* brought by Bonifacio Nicolas against Severino Alberto to test the right of Alberto to hold the office of justice of the peace of the town of Angat, province of Bulacan, in those Islands. The issue is the legal right

of the Governor-General to transfer a justice of the peace from one municipality to another without the consent of the Philippine Senate.

After issue made, the parties, through their counsel, signed a stipulation of facts, from which it appears that on February 9, 1920, the plaintiff was appointed a justice of the peace of Angat, Bulacan, by the Governor-General with the advice and consent of the Philippine Senate; that he qualified, took possession, and exercised the office on and since February 14, 1920, up to August 19, 1927, when he was forced to surrender its possession to the defendant. On February 28, 1918, the defendant was appointed justice of the peace of San José del Monte, Bulacan, by the Governor-General, with the advice and consent of the Senate; he qualified for and exercised the office since then up to August 19, 1927, when, pursuant to an order transferring him to the office of justice of the peace of Angat, Bulacan, he exercised, and has since exercised, the latter office. There was a proceeding by the municipal president of Angat against the plaintiff, which was investigated by the Judge of First Instance of Bulacan, resulting in a report which disclosed unsatisfactory conditions and political partisanship, but with which the president of Angat was not content because the plaintiff was not removed. The matter was appealed to the Secretary of Justice. Thereafter, on July 2, 1927, the Governor-General transferred the plaintiff from Angat to San José del Monte, and also transferred the defendant to the municipality of Angat. There were protests by plaintiff against the transfer, and applications by him for reconsideration; and, finally, through proceedings before the Court of First Instance of Bulacan, the plaintiff yielded up his office under protest, on August 19, 1927, and since that time the defendant has exercised the office of justice of the peace of Angat, excluding the plaintiff therefrom.

The Supreme Court, after the hearing, rendered an opinion by a vote of six judges to three, granting against Alberto a judgment of ouster, to which an application for certiorari to this Court has been duly made and granted. 278 U. S. 593.

Our jurisdiction in this case is questioned. The Act of February 13, 1925, § 7, c. 229, 43 Stat. 940, provides that a certiorari may be issued by this Court to the Supreme Court of the Philippine Islands in any case "wherein the Constitution or any statute or treaty of the United States is involved." The effect of the Philippine Organic Act of Congress, approved August 29, 1916, by § 21, c. 416, 39 Stat. 545, 552, is that an appointment of a justice of the peace by the Governor-General must be consented to by the Senate of the Islands. Section 206 of the Philippine Administrative Code of 1917, as amended by Act 2768, approved March 5, 1918, enacts a proviso that "in case the public interest requires it, a justice of the peace of one municipality may be transferred to another." The point in question is whether that proviso is to be construed as impliedly requiring the consent of the Philippine Senate to the transfer, or whether it was intended to avoid that necessity.

In reaching the conclusion that the proviso of § 206, as properly construed, required the consent of the Senate, the Supreme Court used these words:

" The body of the section sanctions the holding of office by justices of the peace during good behavior. The proviso qualifies this by providing ' That in case the public interest requires it, a justice of the peace of one municipality may be transferred to another.' At once it is noted that the law is silent as to the office or entity which may make the transfer. The law does not say may be transferred ' by the Governor-General.' The insertion of the words ' by the Philippine Senate ' would be as justifiable.

The more reasonable inference, indeed the only possible legal inference permissible without violating the constitution, is that the justice of the peace may be transferred by the exercise of the appointing power, and the appointing power consists of the Governor-General acting in conjunction with the Philippine Senate."

In other words, the interpretation that the court gives to the amended law, with the proviso, depends clearly on what the court calls the Constitution, that is, on the Organic Act, and therefore, even if its construction of the proviso of § 206 could be sustained, it still involved the Organic Act. We have jurisdiction.

In order to understand the scope of this case, we should point out that the Organic Act provided, by §§ 6, 7, 8 and 12, that the laws then in force in the Philippines were to remain in effect, except as altered by the Act itself, until altered, amended or repealed by the legislative authority provided in the Act, or by an Act of Congress; that the legislative authority therein provided had power, when not inconsistent with the Act, to amend, alter, modify or repeal any law, civil or criminal, continued in force by the Act as it might see fit; and that the general legislative powers in the Philippines, except as otherwise provided in the Act, were vested in the Philippine Legislature, consisting of an Assembly and a Senate.

Section 21 provided that the Governor-General of the Philippines should be the supreme executive power in the Philippines, and that he should, unless otherwise provided in the Act, appoint, by and with the consent of the Senate, such officers as might then be appointed by the Governor-General, or such as he was authorized by that Act to appoint, or whom he might thereafter be authorized by law to appoint; that he should have general supervision and control of all the departments and bureaus of the government in the Philippine Islands as *far as*

not inconsistent with the provisions of the Act, and that he should be responsible for the faithful execution of the laws of the Philippine Islands and of the United States operative within those Islands; that all executive functions of the government must be directly under the Governor-General, or within one of the executive departments under the supervision and control of the Governor-General. *Springer* v. *Philippine Islands*, 277 U. S. 189.

After the passage of the Organic Act of 1916, it became necessary to revise the Administrative Code so as to make it conform to the Organic Act, and it is that Code of 1917, with such amendments as have been made by the Legislature, that is now the existing law.

In the Administrative Code of 1916, Act No. 2657, approved February 24, 1916, effective July 1, 1916, provision was made for the appointment and distribution of the justices of the peace as follows:

" Sec. 235. Appointment and distribution of justices of the peace.—One justice of the peace and one auxiliary justice of the peace shall be appointed by the Governor General for the city of Manila, the city of Baguio, and for each municipality, township, and municipal district in the Philippine Islands.

" Sec. 238. Tenure of office.—A justice of the peace having the requisite legal qualifications shall hold office during good behavior unless his office be lawfully abolished or merged in the jurisdiction of some other justice."

Except for the elimination of the provision for justices of the peace in Manila, these sections were reënacted without change in §§ 203 and 206 of the Revised Code of 1917, which also required the consent of the Philippine Senate to the appointment of officers. Section 206 of the 1917 Code was amended by Act No. 2768, approved March 5, 1918, which added to it the proviso now in question in this suit, and its title was also correspondingly changed, so that the section now reads:

" Sec. 206. Tenure of office—transfer from one municipality to another.—A justice of the peace having the requisite legal qualifications shall hold office during good behavior unless his office be lawfully abolished or merged in the jurisdiction of some other justice: Provided, That in case the public interest requires it, a justice of the peace of one municipality may be transferred to another."

Other pertinent provisions of the Revised Code in force when respondent Nicolas was appointed a justice of the peace, and still in force, are:

Sections 220 and 221 provide for salaries of justices of the peace in municipalities of the first class, second class, third class and fourth class, in other places not now specially provided for by law, and in provincial capitals.

Section 222 provides for payment of the salaries of justices of the peace out of insular funds.

Section 228 provides that the judges of the courts of first instance shall at all times exercise a supervision over the justices of the peace within their respective districts, and shall keep themselves informed of the manner in which these justices perform their duties, and during the first five days of the fiscal year the justices shall forward to the judges of their respective districts a report concerning the business done in their courts for the previous year.

Section 229 provides that if at any time the judge of first instance has reason to believe that a justice of the peace is not performing his duties properly, or if complaints are made which, if true, would indicate that the justice is unfit for office, he shall make such investigation of the same as the circumstances may seem to him to warrant, and may, for good cause, reprimand the justice, or may recommend to the Governor-General his removal from office, or his removal and disqualification from holding office, and may suspend him from office pending action by the Governor-General. The Governor-General

may, upon such recommendation or on his own motion, remove from office any justice of the peace or auxiliary justice of the peace.

Section 203, the first half of which has already been quoted, further provides:

" Upon the recommendation of the Department Head, the territorial jurisdiction of any justice and auxiliary justice of the peace may be made to extend over any number of municipalities, townships, municipal districts, or other minor political divisions or places not included in the jurisdiction of a justice of the peace already appointed; and upon like recommendation of the Department Head, the Governor-General may combine the offices of justices of the peace for two or more such jurisdictions already established, and may appoint to the combined jurisdiction one justice of the peace and one auxiliary justice, at a salary not to exceed the total of the salaries of the combined positions."

And, following this, § 204 provides:

" When a new political division affecting the territorial jurisdiction of a justice of the peace is formed or the boundaries limiting the same are changed, the Governor-General, may, in the absence of special provision, designate which of the justices and auxiliary justices within the territory affected by the change shall continue in office; and the powers of any others therein shall cease."

It is to be observed that the Legislature of the Philippines made legislative provision for as close observation of the conduct of justices of the peace as is practicable. They are not like justices of the peace in this country, generally elected by the people. They are selected by the Governor-General and occupy positions of considerable power in these local communities, and exercise a control in the remote districts that makes it of the highest importance that they should be closely under the discipline of the chief executive. They are judicial officers, it is true, but these

provisions indicate how marked a difference there is and
must be between the justices of the peace under our sys-
tem and that of the Philippines. With respect to this
matter we may take judicial notice that while the justices
of the peace are to be treated as an important force for the
preservation of local order and the administration of police
court justice, they are subject to restraint by the Gover-
nor-General to prevent the abuses of their offices by the
ease with which such local official authority lends itself
in the Islands to the creation of caciques or local bosses
exercising oppressive control over ignorant neighborhoods.
This is the reason why their conduct is not only to be
closely inquired into by the courts of first instance, but
also why the Governor-General is given absolute power
of removal or suspension, and the enlargement or restric-
tion of their districts by merging them, and now in this
last amendment, by rearranging their jurisdictions by
transfer in the public interest.

The objection now is made that while, through the
Governor-General, the districts under existing justices of
the peace may be merged, combined, increased or de-
creased, an existing justice of the peace may not be trans-
ferred from one district to another, unless there is a new
appointment of a justice with a new consent by the
Senate.

This brings us to a consideration of the proper construc-
tion of the proviso of § 206 here in question. This proviso
was the result of an amendment by § 1 of Act No. 2768
in February, 1918. The original bill was Senate Bill
No. 163, providing that § 206 of the Administrative Code
be amended by adding the proviso, " that a justice of the
peace of one municipality may be transferred to another
when the government deems it wise." An amendment was
offered in the Philippine Senate adding thereto the words,
" provided further that his appointment by virtue of the
transfer be confirmed by the Senate." With this amend-

ment the bill passed the Senate. When the bill came to the House, the House Committee recommended that the amendment made in the Senate be dropped. It so passed the House, and was then, on February 8, 1918, submitted to the Senate, and the amendment of the House was accepted. A purpose on the part of the Legislature to eliminate from such a transfer the consent of the Senate could hardly be more clearly established.

The majority of the Supreme Court seems to think otherwise. It is sufficient to say that its suggested implication that the consent of the Senate was to be retained, although express provision for it was expressly stricken out. is not convincing. Nor is the significance attached by the majority of the Supreme Court to the silence of the proviso as to the person intended to make the transfer at all impressive. Nor will the suggestion that the Philippine Senate alone might be intended to make the transfer suffice. The history of the legislation as well as the general trend of it with reference to the powers of the Governor-General in the discipline of justices of the peace, their suspension, their removal, the current extension of their jurisdiction by him pending their incumbency, all are convincing that, however invalid the exclusion of the Senate from the consent to the transfer, the purpose of the Legislature was certainly intended to effect that very result.

This brings us therefore to the final issue—whether the consent was necessary to the transfer, even though the Senate and the House, acting together as the Legislature, eliminated it by the proviso. It is to be borne in mind that we are dealing with the Philippine Legislature, which has full power to make legislative provision for the appointment of justices of the peace, to provide for their duties, for the payment of their salaries, for their removal, their suspension, their jurisdiction, and the changes in their jurisdiction, and to vest in the Governor-General,

as the executive, the exercise of the powers it thus creates, or indeed to abolish justices of the peace and substitute some other system. To take a possible example. Suppose that the Philippine Legislature had created the office of justice of the peace, had provided that the Governor-General should appoint forty justices of the peace for certain described districts in the Philippines, and had directed that the Governor-General should designate for them their districts, but that he might change the designation originally fixed by him for their distribution as the public benefit required. It seems to us clear that this would be quite within the power of the Legislature and that the Senate, by consenting to the appointment of each appointee, would be held legally to have confirmed his appointment, not only to act as justice of the peace under his first designation, but would have given him the right to continue to exercise his powers conferred by law in any other district to which he might be transferred, because the Senate would have had full notice as to the powers which he could enjoy and must be held to have consented to his exercise of those broader powers without further consideration and revision. This is the same case. When the Senate confirmed Severino Alberto to be a justice of the peace for San José del Monte, § 206, with the proviso, was in force; and when the Senate confirmed him it confirmed him with the knowledge of the possibility declared in the law that his powers and his functions as a justice of the peace, upon designation of the Governor-General, might be performed and exercised in another jurisdiction, if the Governor-General should think it wise in the public interest in his regulation of the conduct of justices of the peace. There is no such necessary difference between the duties of a justice of the peace in one part of the Islands and those to be performed in another part as to make such enlargement or change of his jurisdiction, already provided for in existing law, unreasonably beyond the scope

of the consent to the original appointment. Such an extension of his duties is of the same kind as those, provided before the proviso was enacted, in respect to the merging of districts, their enlargement, or their combination by uniting one district with another under the existing justice of the peace. See *Shoemaker* v. *United States,* 147 U. S. 282, 301; *Southern Pacific Co.* v. *Bartine,* 170 Fed. 725, 748.

It is constantly to be borne in mind that this whole subject matter, in respect to the institution of justices of the peace as part of the government structure in the Philippines, is wholly within the control of the Legislature. If what they provide results in greater control by the Governor-General than is wise, the Legislature may repeal the provisions tomorrow and substitute some other limitations.

Some general observations were made by the Supreme Court with reference to the necessity of maintaining the independence of the judiciary, and expressions of opinion that this independence should be preserved strictly as it should be with respect to judges of superior court jurisdiction. It has always been recognized that justices of the peace, even in our system, are of less importance in the judiciary, and must be made to conform to greater regulation, than the judges of higher courts. *Capital Traction Co.* v. *Hof,* 174 U. S. 1, 17, 38. Justices of the peace are judicial officers, it is true, but they are much to be differentiated from judges of the courts of record. We do not think, therefore, that the case of *Borromeo* v. *Mariano,* 41 Phil. 322, with reference to the transfer and removal of a judge of the court of first instance, has application here.

*The judgment is reversed.*