In re TOM CARTER ENTERPRISES, INCORPORATED, Debtor.

Curtis B. DANNING, James J. Joseph, Co-Trustees, Plaintiffs,

v.

William R. LUMMIS and First Interstate Bank of Nevada, N.A., Co-Special Administrators for the Estate of Howard Robard Hughes, Jr., Deceased, Defendants.

Bankruptcy No. SA 83–05401 RP.

Adv. No. SA 84–0624 RP.

United States District Court, C.D. California.

Dec. 7, 1984.

Richard Levin, Stutman, Triester & Glatt, Los Angeles, Cal., for plaintiffs.

Ronald S. Orr, Kathleen T. Lax, David H. Kennedy, Gibson, Dunn & Crutcher, Los Angeles, Cal., Andrews & Kurth, Washington, D.C., Morse & Mowbray, Las Vegas, Nev., for defendants.

Robert C. Bonner, U.S. Atty., Carolyn M. Reynolds, Asst. U.S. Atty., Los Angeles, Cal., Richard K. Willard, Acting Asst. Atty. Gen., J. Christopher Kohn, Tracy J. Whitaker, Allen L. Lear, Attys., Dept. of Justice, Civ.Div., Washington, D.C., for Dept. of Justice.

Michael Davidson, M. Elizabeth Culbreth, Morgan J. Frankel, John C. Grabow, Washington, D.C., for U.S. Senate.

Steven R. Ross, Charles Tiefer, Michael L. Murray, Washington, D.C., for Speaker & Bipartisan Leadership Group.

Richard Lieb, Laurence J. Kaiser, Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for Bankruptcy Judges.

## AMENDED MEMORANDUM AND ORDER

TAKASUGI, District Judge.

This matter came before the court for hearing on November 26, 1984 on the motion by the defendants Co-Special Administrators of the Estate of Howard Robard Hughes, Jr. ("Hughes Estate") to withdraw the reference made to Bankruptcy Judge Ralph G. Pagter of this action and to set a hearing on the preliminary injunction before the District Court on the grounds that the appointment of the bankruptcy judge under the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Act") violated the Appointments Clause of the Constitution and that the adjudication of this action by the bankruptcy judge violates Article III of the Constitution; and on the alternative motion by the Hughes Estate for discretionary abstention under 28 U.S.C. § 1334(c)(1) so that the state court of Nevada may determine the rights herein. Plaintiffs Co-Trustees oppose this motion. Pursuant to stipulation filed herein, the Department of Justice ("Justice"), the United States Senate ("Senate") and the Speaker and Bipartisan Leadership Group of the House of Representatives ("House") have been allowed to intervene and have filed briefs herein. Bankruptcy Judges Keith M. Lundin; Mark B. McFeeley; William L. Norton, Jr.; George C. Paine, II; Hugh Robinson; Arthur N. Votolato, Jr. ("six bankruptcy judges") have also intervened and filed a brief herein.

Prior to filing his petition in bankruptcy, the Debtor entered into an agreement to purchase real property located in the State of Nevada from the Hughes Estate and had paid certain sums toward the purchase. Said purchase agreement was approved by the Nevada state probate court, but prior to consummation, the petition herein was filed. Defendant contends that plaintiffs have no interest in the property because the Debtor, through the plaintiffs, failed to consummate the agreement for the purchase of said property.

## APPOINTMENTS CLAUSE

■ The Appointments Clause of the Constitution concerns the balance of power among the three branches of government. Upon creating an office by legislation, the Appointments Clause prohibits Congress from appointing a person to fill that office. Congress, in response to the Supreme Court's ruling in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), enacted the 1984 Act which resurrected, retroactively, the office of bankruptcy judge created under the Bankruptcy Reform Act of 1978 ("1978 Act") and extended the terms of office of the bankruptcy judges. Defendant essentially contends that the 1984 Act violates the Appointments Clause because the expiration of the bankruptcy courts prior to the enactment of the 1984 Act rendered the previously appointed bankruptcy judges private citizens who were then "appointed" to the offices of bankruptcy judges by the enactment of the 1984 Act. Defendant argues that this lapse in time between the expiration of the bankruptcy courts and the enactment of the 1984 Act coupled with the retroactivity of the 1984 Act constitutes an unconstitutional appointment by Congress. Plaintiff argues both a statutory construction to avoid the constitutional issue and that there is no violation of the Appointments Clause.[1]

Under the 1978 Act, § 404(a) provided for the term of the bankruptcy court itself and § 404(b) provided for the terms of the sitting bankruptcy referees. Plaintiff, the Senate, the House and the six bankruptcy

---

**1.** See *In re Benny,* 44 B.R. 581 (N.D.Cal.1984) for a review of the above-mentioned bankruptcy laws and their temporal interrelationships. The Northern District, in *In re Benny,* has addressed these same issues and has applied a statutory construction avoiding the constitutional issue and has alternatively held that even if the constitutional issue is reached, the 1984 Act does not violate the Appointments Clause.

judges contend that because § 404(b) of the 1978 Act provides that "The term of a referee in bankruptcy ... is extended to and expires on March 31, 1984 or when his successor takes office," the terms of the bankruptcy judges continued, uninterrupted, through the enactment of the 1984 Act on July 10, 1984. This contention is based on the argument that the alternative expiration point—"when his successor takes office"—has not taken place and, therefore, the terms of the bankruptcy judges did not expire before the enactment of the 1984 Act. However, § 404(a) which provides for the term of the bankruptcy courts provided the expiration date of March 31, 1984 and did not provide such an alternative expiration point. Section 404(b) only refers to the expiration of the term of office of the sitting bankruptcy judges and does not extend the expiration under § 404(a) of the bankruptcy courts which occurred on June 27, 1984.[2] That alternative expiration point could not effect an extension of the terms of office past the expiration of the office itself. Furthermore, as the 1984 Act expresses the intent to retroactively extend the bankruptcy judges' terms to the date of its enactment, it appears that Congress did not contemplate that the alternative expiration point contained in the 1978 Act obviated the need for a retroactive extension. Hence, the constitutional issue is not avoided.

As part of its constitutional authority to create offices, Congress' power to alter the terms of offices it has previously established has long been recognized. Indeed, the Supreme Court has consistently rejected Appointments Clause attacks on legislation changing the terms and duties of of-fice. *Crenshaw v. United States*, 134 U.S. 99, 10 S.Ct. 431, 33 L.Ed. 825 (1890); *Shoemaker v. United States*, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170 (1893); *Alberto v. Nicolas*, 279 U.S. 139, 49 S.Ct. 317, 73 L.Ed. 642 (1929). As such, this constitutional challenge reduces to the question of whether Congress has the authority to enact retroactive legislation.

That it is within Congress' power to make its laws apply to transactions already completed at the time of enactment is not open to serious question. In *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, —— U.S. ——, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), which involved a statute that imposed liability retroactively by having an effective date five months prior to its enactment, the Court held that if "the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means," it passes the constitutionality test. *Id.* at ——, 104 S.Ct. at 2718. Although the constitutional challenge involved in *Pension Benefit* was that of due process which is different from the challenge of separation of powers involved here, the result is the same. What *Pension Benefit* teaches is not that all retroactive legislation is constitutional, but that retroactivity does not automatically render legislation unconstitutional. The question is whether *this* particular retroactive act is unconstitutional. To answer that requires a determination of whether the principles embodied in the Appointments Clause have been violated.

■ The central concern of the Appointments Clause is the "aggrandizement" of power in a single branch. *Buckley v. Va-*

2. The 1978 Act provided for a four-year transition period for the implementation of its comprehensive revisions to the bankruptcy court system. Although *Marathon* struck down the jurisdictional grant of authority to bankruptcy courts, it left intact those provisions of the 1978 Act establishing bankruptcy courts and offices for the transition period. However, the statutory term of the bankruptcy court was set to expire on March 31, 1984. Unable to reach agreement on new legislation, Congress enacted emergency measures extending the office of bankruptcy judge and the terms of office of sitting judges to June 27, 1984. The June 27, 1984 expiration date was never extended. The 1984 Act was then signed into law on July 10, 1984. The 1984 Act extended the office and terms of the bankruptcy judges from June 27, 1984 to the date of enactment of the 1984 Act, §§ 121(b) and 121(c), and thereupon provided that the terms of all bankruptcy judges who were sitting in office on the date of enactment were extended to the date four years from appointment or October 1, 1986, whichever is later. § 106(a).

*leo,* 424 U.S. 1, 128–29, 96 S.Ct. 612, 686–87, 46 L.Ed.2d 659 (1976). The retroactive extension of office of bankruptcy judge can in no principled way be said to encroach upon the separation of powers principles embodied in said Appointments Clause.

The 1984 Act merely extends the terms of all individuals who had been sitting bankruptcy judges, each of whom had been appointed by a district court. § 106(a). These extensions are interim and short-term. Upon the staggered expiration of the terms between 1986 and 1988, the Courts of Appeals will appoint regular successors to 14-year terms. § 104(a). Until this date, said Appeals Courts may remove the interim judges for cause and fill those vacancies that arise by removal, death or resignation.

Thus, the effect of the 1984 Act is to continue in office properly appointed judicial officers, and not to select or appoint new individuals to judicial office. As such, Congress' interim extension of the tenure of incumbent bankruptcy judges does not threaten the independence of the Executive or Judicial Branches, and has impaired no separation of powers values. Only a literalistic approach placing form over substance could transform what Congress clearly could do prospectively—extend offices—into a constitutional violation when done retrospectively. Thus it is clear that Congress acted well within its authority in enacting the extension provisions and did not violate the Appointments Clause of the Constitution.

### ARTICLE III

■ Defendant Hughes Estate contends that *the reference of core matters* under the 1984 Act is inconsistent with Article III of the Constitution. Specifically, defendant challenges the power of bankruptcy judges to exercise ultimate decision-making authority over matters involving state-created rights where there is only a clearly erroneous standard on review by the district court. The involvement of state-created rights in a bankruptcy matter does not, *ipso facto,* result in a finding that it is not a core matter.

The fundamental value served by Article III is the assurance that judicial power reposes in an independent judiciary. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 60, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982). In *Marathon,* the Supreme Court held that Congress' broad grant of jurisdiction to the bankruptcy courts under the 1978 Act conferred too much of the Article III judicial power of the United States on non-Article III officers.

Responding to this concern, the 1984 Act restricts the final adjudicatory authority of the bankruptcy judges to traditional or "core" bankruptcy matters. In "non-core" proceedings only related to a bankruptcy case, the bankruptcy judge is limited to submitting recommendations to the district court.

More significantly, under the 1984 Act, the bankruptcy courts are no longer independent of the district courts but are their subordinate *adjuncts.* The district court retains primary jurisdiction over bankruptcy proceedings. 28 U.S.C. § 1334. Bankruptcy judges are a "unit" of the district court, and their exercise of adjudicatory authority is subject to the "rule or order of the district court." 28 U.S.C. § 151. Bankruptcy judges are appointed by Article III courts of appeal and are removable by the judicial council of the Circuit. 28 U.S.C. 152(a)(1) and (e). The district court also retains the power to withdraw any proceeding on its own motion or on the motion of any party. 28 U.S.C. § 157(d). This withdrawal power of the district court may be exercised at any time before a final decision has been rendered by the bankruptcy judge.

It is this withdrawal mechanism which assures the direct control and authority of the district court over all bankruptcy proceedings and which protects parties from potential abuse of discretion by the bankruptcy judge in the making of the initial core/non-core determination. (Furthermore, the correctness of any ruling by the bankruptcy judge may also be challenged on appeal.)

Such administrative control has been held sufficient to satisfy Article III precepts in the context of the Federal Magistrates Act. Thus, in *Pacemaker Diagnostic Clinic v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir.,1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984), the Ninth Circuit (En Banc) observed that the Act "invests the Article III judiciary with extensive administrative control over the management, composition and operation of the magistrate system. It permits, moreover, control over specific cases by the resumption of district court jurisdiction on the court's own initiative ... we conclude that it contains sufficient protection against the erosion of judicial power to overcome the constitutional objections leveled against it." *Id.* at 544.

The 1984 Act gives the district courts the same administrative controls as those present in the Magistrates Act. Hence, the same result must obtain here; the reference of core matters is constitutional.

It must also be noted that the power of Congress to utilize adjuncts is at its height when Congress is creating federal rights. *Marathon* 458 U.S. at 80, 102 S.Ct. at 2876. That core bankruptcy proceedings involve matters of federal right cannot seriously be questioned. As the plurality expressly noted in *Marathon*, "bankruptcy adjudications themselves, as well as the manner in which the rights of debtors and creditors are adjusted, are matters of federal law." *Id.* at 84, n. 36, 102 S.Ct. at 2878, n. 36. Nor is the federal character of a core bankruptcy proceeding changed by the fact that the substantive rights being adjusted are often created by state law. Congress made this explicit in the 1984 Act when it provided that "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State Law." 28 U.S.C. § 157(b)(3).

Thus, core bankruptcy proceedings are matters of federal right which are uniquely susceptible to adjudication by an adjunct.

Moreover, the jurisdictional challenge defendant raises has been previously rejected (in the context of the reference rule promulgated to keep the bankruptcy system functioning after *Marathon*) by seven Circuit Courts of Appeals: *In re Colorado Energy Supply Inc.*, 728 F.2d 1283 (10th Cir.1984); *In re Kaiser*, 722 F.2d 1574 (2d Cir.1983); *Coastal Steel v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983). *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254 (6th Cir.1983); *In re Hansen*, 702 F.2d 728 (8th Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); *In re Braniff Airways, Inc.*, 700 F.2d 214 (5th Cir.1983), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1304 (1983).

The court system established by the 1984 Act is a congressional adoption and codification of the system utilized under the reference rule. Indeed, the only significant distinction between the two systems is a different standard of review in core matters. Under the reference rule, the district court was not required to give deference to the findings of the bankruptcy judge and could hold its own hearing and receive additional evidence. Under the 1984 Act, the district court acts as a Court of Appeals, applying a clearly erroneous standard of review.

However, such a difference is merely textual. Under the 1984 system, the district court retains the power to withdraw any proceeding at any time prior to the final decision by the bankruptcy judge. Thus, the district court has the discretion to review on appeal or withdraw reference and exercise complete authority over the proceeding. In any event, a clearly erroneous standard of review for core matters has been held fully consistent with Article III principles. *In re Morrissey*, 717 F.2d 100, 104 (3rd Cir.1981); *1616 Reminc Ltd. Partnership v. Atchison & Keller*, 704 F.2d 1313 (4th Cir.1983).

Hence, the bankruptcy structure created by the 1984 Act is virtually identical to the system established under the reference rule. The seven courts of appeal upholding the constitutionality of the reference rule thus provide strong precedent by which to

sustain the constitutionality of the new system.

ABSTENTION

█ In its alternative motion, defendant Hughes Estate requests that this court abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1). Defendant claims that abstention is appropriate because plaintiffs' claims are fundamentally grounded in Nevada State Law and have been previously resolved by a Nevada probate court. Defendant further contends that 11 U.S.C. §§ 105, 362, 365 and 541, on which plaintiffs rely in their adversary suit do not alter rights in conflict with state law. In thus arguing that no federal bankruptcy interest exists to bar abstention, defendant fails to recognize that bankruptcy law, by its very nature, preempts certain state created rights. Adjudicating the rights to the Nevada property under the bankruptcy law is, by definition, a bankruptcy issue to be adjudicated by the bankruptcy court and not by the Nevada probate court. Furthermore, it seems that the questions raised by defendant only concern the extent that bankruptcy law affects state created rights; those are bankruptcy issues addressed in determining whether the automatic stay pursuant to 11 U.S.C. § 362 should be lifted or terminated with respect to defendant's interest in the Nevada property.

Therefore, because of the strong federal bankruptcy interests at stake, which a Nevada probate court has not and could not adjudicate, abstention herein is not appropriate.

Accordingly,

IT IS ORDERED that the motion by defendant Hughes Estate to withdraw the reference to the bankruptcy court is respectfully denied.

IT IS FURTHER ORDERED that the alternative motion by defendant Hughes Estate to abstain is denied.