In re PRODUCTION STEEL, INC., Debtor.

PRODUCTION STEEL, INC., Plaintiff,

v.

BETHLEHEM STEEL CORPORATION, Defendant.

No. 3–84–1079.

United States District Court, M.D. Tennessee, Nashville Division.

April 17, 1985.

John Chambers, Margaret Huff, Nashville, Tenn., for plaintiff.

C. Kninian Cosner, Sam J. McAllester, Nashville, Tenn., Edith G. Haver and Henry G. Whitton, Law Dept., Bethlehem Steel Corp., Bethlehem, Pa., for defendant.

Joe B. Brown; U.S. Atty., Nashville, Tenn., Paul Blankenstein, Washington, D.C., for intervenor United States.

Steven R. Ross, Gen. Counsel, Washington, D.C., for intervenors House Speaker and Bipartisan Leadership Group.

Lawrence J. Kaiser, Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for intervenor Bankruptcy Judges.

Michael Davidson, Asst. Legal Counsel, Morgan J. Frankel, Asst. Legal Counsel, Washington, D.C., for intervenor U.S. Senate.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Production Steel, Inc., as debtor-in-possession, has brought a preference action in bankruptcy court against Bethlehem Steel Corporation ("Bethlehem") seeking to recover $620,056.79 allegedly paid to Bethlehem during the ninety days prior to the filing of the Chapter 11 petition by Production Steel. On October 5, 1984, this Court granted the motion of Production Steel and Bethlehem for a partial withdrawal of reference of this action in order to rule on the constitutionality of Sections 104(a), 106(a), and 121(e) of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Act"). Bethlehem challenges the constitutionality of all three sections. The United States (hereinafter referred to as "Justice Department") has intervened to support the constitutionality of Section 104(a) and to challenge the constitutionality of Sections 106(a) and 121(e). The United States Senate and the Speaker and Bipartisan Leadership Group of the United States House of Representatives have intervened in support of the constitutionality of Sections 106(a) and 121(e). Bankruptcy Judges Lundin, McFeeley, Norton, Paine, Robinson, and Votolato have intervened in support of the constitutionality of Sections 106(a) and 121(e). This cause came on for hearing on January 24, 1985. For the reasons discussed below, it is the judgment of the Court that Sections 104(a), 106(a), and 121(e) are constitutional.[1]

---

1. The issues raised before this Court have been addressed in other courts, and all but one have upheld the constitutionality of the provisions in dispute. *See In re Moody,* 46 B.R. 231 (M.D.N.C. 1985) (upholding the constitutionality of Sections 106(a) and 121(e)); *In re Tom Carter Enterprises, Inc.,* 44 B.R. 605 (C.D.Calif.1984) (upholding the constitutionality of Sections 104(a), 106(a), and 121(e)); *In re Benny,* 44 B.R. 581 (N.D.Calif.1984) (upholding the constitutionality of Sections 106(a) and 121(e)); *In re Moens,* No. 84–4109, slip op. (C.D.Ill. Feb. 21, 1985) (upholding the constitutionality of Sections 104(a), 106(a), and 121(e)); *In re Whet, Inc.,* No. CA

The part of Section 104(a) that is in dispute will be codified as 11 U.S.C. §§ 157, 158.[2] The relevant portions of those sections permit the district court to refer any or all cases arising under Title 11 to the district's bankruptcy judges. 28 U.S.C. § 157(a). Section 157 authorizes the bankruptcy judges in "core" bankruptcy cases to enter orders and judgments subject to the review of the district courts. 28 U.S.C. §§ 157(b)(1), 158. The basis of one of the two constitutional challenges in this action is the standard of review that is applicable

84–2985–T, slip op. (D.Mass. Jan. 18, 1985) (upholding the constitutionality of the entire 1984 Act generally)); *In re Bricker Systems, Inc.,* 44 B.R. 952 (Bankr.E.D.Wis.1984) (upholding the constitutionality of Section 106(a)); *In re Wasatch Factoring, Inc.,* No. 84 PA–1013, slip op. (C.D.Utah Dec. 3, 1984 (upholding the constitutionality of Section 121(e)). Bankruptcy Judge David L. Crawford found Section 104(a) to be unconstitutional. *See Associated Groceries of Nebraska Co-op, Inc. v. Nabisco,* 46 B.R. 173 (Bankr.D.Neb.), Transcript of Proceedings, Jan. 21, 1985, at 16–21.

**2.** Relevant parts of Section 157 provide as follows:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

.    .    .    .    .

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

Section 158 provides in part as follows:

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the

in core cases that have been appealed to district court.

For the purposes of judicial review, Section 157 divides cases heard by bankruptcy judges into core and noncore cases. A nonexhaustive list of core proceedings is listed in Section 157(b)(2).[3] The bankruptcy judges are responsible for determining whether a proceeding should be considered as core or noncore. 28 U.S.C. § 157(b)(3). In core proceedings, the bankruptcy court enters final judgments, orders, and decrees

bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

**3.** Section 157(b)(2) provides as follows:

Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

which are subject to appeal to the district court. 28 U.S.C. § 158(a).

The bankruptcy court may not enter final judgments, orders, or decrees in noncore proceedings. 28 U.S.C. § 157(c)(1). Instead, the bankruptcy court submits findings of fact and conclusions of law to the district court, which are then subject to de novo review. *Id.* Section 157(d) provides that any reference to the bankruptcy court may be withdrawn by the district court in whole or in part "for cause shown." [4]

■ Bethlehem's contention is that because the bankruptcy court may enter final judgment in core proceedings, such as this preference action, that aspect of the 1984 Act is unconstitutional. In order to understand Bethlehem's position fully, it is necessary to discuss the two roles of the bankruptcy court. In noncore matters, the bankruptcy court acts as an adjunct to the district court, in a fashion similar to that of a magistrate or a special master. In noncore matters, the bankruptcy court may not enter final judgments without the consent of the parties, and its findings of fact and conclusions of law made in noncore matters are subject to de novo review by the district court. This aspect of the bankruptcy court's role is thus identical to the magistrate's role approved by the Supreme Court in *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).[5] In contrast to the bankruptcy court's authority in noncore cases, the bankruptcy court may enter final judgments in so-called core cases, which are appealable to the district court. The standard for appeal of core matters to the district court is the same as in other civil matters appealed from the district court to the circuit courts of appeal. 28 U.S.C. § 158(c).

This dual approach to matters considered by the bankruptcy court was Congress' reaction to the Supreme Court's plurality decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Marathon* was a contract and tort action brought in bankruptcy court by a debtor who had filed a petition in bankruptcy under Chapter 11. The defendant, Marathon Pipe Line Co., challenged the constitutionality of the bankruptcy judge's authority under the Bankruptcy Act of 1978 ("1978 Act"). In finding that the 1978 Act unconstitutionally conferred Article III judicial power upon judges who lacked life tenure and protection against salary reduction, the plurality was primarily concerned with the impact of the 1978 Act upon the ability of the judiciary in our system of checks and balances to remain independent of the other branches of government. *Id.* at 57–60, 102 S.Ct. at 2864–2866. The Court specifically rejected the argument that pursuant to any of its Article I powers, Congress was free to create non-Article III adjudicatory tribunals. *Id.* at 73, 102 S.Ct. at 2872. The Court discussed this situation in the context of the so-called public rights doctrine. The Court stated that the public rights doctrine includes matters that "could be conclusively determined by the Executive

---

4. The term, "for cause shown," is not defined.

5. In *Raddatz*, the district court had referred a criminal case to the magistrate for the purposes of conducting a suppression hearing. *Id.* 100 S.Ct. at 2409. The district court did not conduct a hearing to determine whether it should adopt the magistrate's findings, choosing instead to make its "de novo determination," as required by the 1976 amendments to the Federal Magistrate's Act, 28 U.S.C. § 636(b)(1), without benefit of a hearing. *Id.* at 2410–11. The defendant subsequently challenged the constitutionality of the 1976 amendments.

In upholding the constitutionality of the 1976 amendments to the Federal Magistrate's Act, the Court held that the Act suffered no Article III problems and that it struck a proper balance between the demands of due process and the constraints of Article III. *Id.* at 2415–16. In particular the Court noted that the district court as ultimate decisionmaker had broad discretion, including the authority to call witnesses and to accept, reject, or modify the proposed findings of the magistrate. *Id.* The Court also found that the Act provided for adequate safeguards to alert the district court to the need to exercise that discretion. *Id.* But of most importance to the Court was its conclusion that the Article III value of an independent judiciary was protected. *Id.* ("The entire process [including the decision to refer a matter to the Magistrate] takes place under the district court's total control and jurisdiction").

and Legislative branches." *Id.* at 68, 102 S.Ct. at 2870. Although the Court refused to make a definitive distinction between public and private rights, it held that as a minimum public rights involved matters between the government and others. *Id.* at 69, 102 S.Ct. at 2870 (quoting *Ex Parte Bakelite Corp.*, 279 U.S. 438, 451, 49 S.Ct. 411, 413, 73 L.Ed. 789 (1929)).

Although acknowledging that Article III courts are not required for all federal adjudications, the Court was unwilling to permit Congress to establish legislative courts,[6] thus bypassing Article III, unless there was a "limiting principle." *Id.* at 73. In the context of the facts of *Marathon,* the Supreme Court indicated that permitting non-Article III judges to decide all cases, including those which merely related to bankruptcy proceedings, demonstrated no limiting principle.

> [T]he substantive legal rights at issue in the present action cannot be deemed "public rights." Appellants argue that a discharge in bankruptcy is indeed a "public right," similar to such congressionally created benefits as "radio station licenses, pilot licenses, or certificates for common carriers" granted by administrative agencies. But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not.

*Id.* 458 U.S. at 71, 102 S.Ct. at 2871 (citation omitted). The Court concluded that "Art. [sic] III bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under the bankruptcy laws." *Id.* at 76, 102 S.Ct. at 2874.

The Court in *Marathon* also rejected the argument that the bankruptcy courts under the 1978 Act should be viewed as mere adjuncts of the district courts. *Id.* at 86–87, 102 S.Ct. at 2879–2880. The Court recognized that if Congress has created a substantial federal right, "it possesses substantial discretion to prescribe the manner in which that right may be adjudicated—including the assignment to an adjunct of some functions historically performed by judges." *Id.* But the Court held that the use of adjuncts in fact-finding and adjudicative roles was permissible only as long as the courts are able to maintain "sufficient control" over those adjuncts. *Id.* at 78–79, 102 S.Ct. at 2875–2876. Therefore, in order to pass constitutional muster, the adjuncts' functions must be restricted in such a way as to retain "the essential attributes" of judicial power in an Article III court. *Id.* at 81, 102 S.Ct. at 2876.

The 1984 Act clearly demonstrates Congress' attempt to cure the constitutional infirmities discussed in *Marathon.* Specifically, the Act provides for de novo review for issues, such as those arising in *Marathon,* which are not at the core of the federal bankruptcy power. In the same legislation Congress, apparently relying on the language in *Marathon* that matters at the core of the federal bankruptcy power "may well be a 'public right' ", *Id.* at 71, 102 S.Ct. at 2871, conferred on the bankruptcy courts authority to make final judgments in core cases. The Congress also took precautions to assure that the authority of the bankruptcy courts would be properly limited so that the Article III courts would retain the essential attributes of judicial power. In particular, all bankruptcy jurisdiction is conferred upon the district courts. 28 U.S.C. § 1334. Furthermore, the bankruptcy judges are to be selected by the circuit courts of appeals, 28 U.S.C. § 152(a)(1) and (e). In addition, each district decides whether it will refer or withdraw any or all bankruptcy cases to or from the bankruptcy court, 28 U.S.C. § 157(a), and the district court is entitled to withdraw part or all of the reference in any particular action "for cause shown." 28 U.S.C. § 157(d). Appeals as to core and

---

**6.** For a discussion of the distinctions between Article III courts and Article I, or so-called legislative, courts, see *Palmore v. United States,* 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).

noncore matters are to the district court that originally referred the case. Thus, under the 1984 Act Congress has assured protection of the Article III principle that the judiciary be free from incursion by the other two branches of the federal government. *See Marathon,* 458 U.S. at 79 n. 30, 102 S.Ct. at 2875 n. 30.

■ In this Court's view, Congress has created a system of bankruptcy courts with two distinguishable bases of authority. First, each court is a "legislative court" with the authority to make final judgments on matters that are at the core of the federal bankruptcy power. Second, each court is also an adjunct to the district court in matters that are merely related to bankruptcy proceedings. It is the judgment of this Court that 28 U.S.C. §§ 157, 158 satisfy the requirements of *Marathon* and are therefore constitutional.

■ Defendant Bethlehem with the support of the Justice Department also maintains that Sections 106(a) and 121(e) of the 1984 Act violated the Appointments Clause of Article II of the United States Constitution.[7] Sections 106(a) and 121(e) provide that the terms of bankruptcy judges who were serving on June 27, 1984, would be extended until four years after their last appointment or until October 1, 1986, whichever occurred later. The position of Bethlehem and the Justice Department is that when the President signed the 1984 Act into law on July 10, 1984, there were no bankruptcy courts and no bankruptcy judges; therefore, their contention is that because there were no bankruptcy judges when the President signed the 1984 Act, the effect of the two sections is to appoint specific individuals to specific offices in violation of the Appointments Clause. Bethlehem and the Justice Department maintain that the attempted retroactive extension provided by Section 121(e) was not constitutionally permissible because it infringes on the right of the President or the courts to appoint officers of the United States. In other words, when the terms of the bankruptcy judges expired on June 27, 1984, the Appointments Clause was "triggered" so that any attempt to restore the same individuals to the office of bankruptcy judge by retroactive legislation was ineffective.

In order for the Court to reach the constitutional challenge raised by Bethlehem and the Justice Department, the Court must first find that when the President signed the 1984 Act, all offices of bankruptcy judges were vacant. Because the Court concludes that there was no gap in the incumbency of the bankruptcy judges or the bankruptcy courts, the Court declines to consider the constitutional issue raised by Bethlehem and the Justice Department.

First, the Court will consider the argument that there were no bankruptcy judges in the period from June 28, 1984, until July 10, 1984. The 1978 Act provides that the terms of office for bankruptcy judges be based on whether they were serving as bankruptcy referees at the time that the 1978 Act was enacted or whether they were appointed as judges after the 1978 Act was enacted.

As to those serving prior to the 1978 Act, the Act contained the following provision: "The term of a referee in bankruptcy who is serving on the date of enactment of this Act is extended to and expires on March 31, 1984 or when his successor takes office." P.L. 95–598, Title IV, § 404(b), 92 Stat. 2683. The period of time between the enactment of the 1978 Act and the March 31, 1984, expiration date, is referred to in the 1978 Act as the "transition period" during

---

7. The Appointments Clause provides that the President

shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. Art. II, § 2, cl. 2.

which continuity from the prior bankruptcy act to the provisions of the 1978 Act would be assured.

As discussed above, the plurality in *Marathon* declared that the 1978 Act violated Article III of the Constitution in that it vested Article III powers in judges without providing all of the protections of Article III to them. 458 U.S. at 87, 102 S.Ct. at 2879. Although the Supreme Court stayed its judgment until December 24, 1982, *Id.* at 88, 102 S.Ct. at 2880, *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 459 U.S. 813, 103 S.Ct. 199, 74 L.Ed.2d 160 (1984), Congress did not enact any remedial legislation before the deadline and most district courts were forced to issue orders, based on a model emergency rule proposed by the Judicial Conference of the United States, which continued the bankruptcy courts with powers substantially the same as they had prior to the 1978 Act. This district court entered such an order on December 24, 1982. In re Administration of the Bankruptcy System (Adm. Order No. 28, Dec. 24, 1982). As the March 31, 1984 deadline of Section 404(b) approached, Congress had still not enacted legislation to remedy the constitutional deficiencies of the 1978 Act; therefore, intending to assure a continuation of the transition period set forth in the 1978 Act, Congress amended Section 404(b) four times in 1984, extending the expiration date to April 30, 1984, May 25, 1984, June 21, 1984, and

June 28, 1984. Pub.L. No. 98–249, 98 Stat. 116 (1984); Pub.L. No. 98–271, 98 Stat. 163 (1984); Pub.L. No. 98–299, 98 Stat. 214 (1984); Pub.L. No. 98–325, 98 Stat. 268 (1984). Section 1(b) in each of the four extension acts provided for the striking of the date contained in Section 404(b) of the 1978 Act and the insertion of the new expiration date. For example, Section 2 of Pub.L. No. 98–249, 98 Stat. 116 provided: "The term of office of any bankruptcy judge who was serving on the date of the enactment of this Act is extended to and shall expire on May 1, 1984." Each of the three subsequent extensions contained identical provisions, except that the dates were changed respectively to April 30, 1984, and May 25, 1984, to May 25, 1984, and June 20, 1984, and to June 20, 1984, and June 27, 1984. These extension acts were effective in extending the terms until June 27, 1984 for bankruptcy judges who had served as referees prior to the enactment of the 1978 Act. As to the period after June 27, 1984, the holdover provision of Section 404(b) of the 1978 Act plainly states that the term of the bankruptcy judges extends until their successors take office. In the interim between June 27, 1984, and July 10, 1984, no successors were appointed; therefore, the terms of the bankruptcy judges had not expired.[8]

As to judges who were appointed after the enactment of the 1978 Act, their terms were governed by Section 404(d) of the 1978 Act, which provides:

---

8. In its memorandum the Justice Department argues that Section 2 in each of the extensions does not mention the possibility of holdovers; therefore, the Department argues that Section 404(b) of the 1978 Act was amended by Section 2 of the extensions so as to delete the holdover provision. Section 2 of the extensions poses a problem for the Court. If Section 2 has the meaning urged by the Justice Department, then the cited part of Section 1 of the extensions is not necessary and in fact must be ignored. If Section 2 does not effectively delete the holdover provision, then Section 2 is redundant. The Court is mindful of its obligation to construe legislation so as to avoid constitutional problems, if such a construction is fairly possible. *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). *See also Swain v. Pressley*, 430 U.S. 372, 378 n. 11, 97 S.Ct. 1224, 1228 n. 11, 51 L.Ed.2d 411 (1977); *Scales v.*

*United States*, 367 U.S. 203, 211, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961). In this case taking each extension Act as a whole, the Court is convinced that the intent of Congress was to extend the dates mentioned in each extension Act and not to delete the holdover provision. *Contra In re Tom Carter Enterprises Inc.*, *supra* note 1, at 842. There is no legislative history that indicates that Congress intended to repeal the holdover provision and the Court sees no other indication of such congressional intent. Perhaps the complexity of the Bankruptcy Act of 1898 and the 1978 Act and the pressure of the Supreme Court decisions in *Marathon* and *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), caused Congress to be overly cautious in the event that the courts might misinterpret its intent. In any event this Court is convinced that Congress did not intend to delete the holdover provision.

Except as otherwise provided in this section or in section 407 of this Act, matters relating to the office of United States bankruptcy judges and to United States bankruptcy judges shall continue to be governed during the transition period by the rules set forth in sections 34, 35, 36, 40a, 40b, 40d, 41, and 43 of the bankruptcy Act as such Act existed on September 30, 1979.

Section 34 of the Bankruptcy Act of 1898 provides in part:

"[e]xcept as otherwise provided in section 65 of this title, each appointment and reappointment shall be for a term of six years. Upon the expiration of his term, a referee in bankruptcy shall continue to perform the duties of his office until his successor is appointed...." 11 U.S.C. § 62(a) (repealed 1978). Therefore, the 1978 Act, by incorporating Section 34, provided that bankruptcy judges appointed during the transition period would serve six year terms and would continue to act as bankruptcy judges until their successors were appointed.

It is clear to the Court that for judges appointed prior to the 1978 Act and for those appointed after the 1978 Act, there is a holdover provision, which provides that bankruptcy judges shall continue in office until a successor is appointed. The Court's judgment, therefore, is that there was no break in the continuity of service of the bankruptcy judges and that all bankruptcy judges continued in office under the applicable holdover provisions of the 1978 Act or the Bankruptcy Act of 1898 until July 10, 1984, when the 1984 Act went into effect. At that point the terms of the bankruptcy judges were extended by Section 106(a) of the 1984 Act, which provides:

Notwithstanding section 152 of title 28, United States Code, as added by this Act, the term of office of a bankruptcy judge who is serving on the date of enactment of this Act is extended to and expires four years after the date such bankruptcy judge was last appointed to such office or on October 1, 1986, whichever is later.

Pub.L. No. 93–353, § 106(a), 98 Stat. 333, 342.[9]

Bethlehem and the Justice Department, however, assert that because there were no bankruptcy courts after June 27, 1984, there could be no bankruptcy judges, regardless of any holdover provisions; thus, the judges lost their positions when they lost their courts. When the 1984 Act was enacted, they contend, the Appointments Clause was violated inasmuch as Congress in effect "reappointed" all the judges who had left office after June 27, 1984. This Court is in agreement with the opinion of Judge Mihm in *In re Moens,* No. 84–4109, slip op. at 5–8 (C.D.Ill. Feb. 21, 1985), that there was never a break in the continuity of the bankruptcy court. Section 404(a) of the 1978 Act provides as follows:

The courts of bankruptcy, as defined under section 1(10) of the Bankruptcy Act, created under section 2a of the Bankruptcy Act, and existing on September 30, 1979, shall continue through March 31, 1984, to be the courts of bankruptcy for the purposes of this Act and the amendments made by this Act. Each of the courts of bankruptcy so continued shall constitute a separate department of the district court that is such court of bankruptcy under the Bankruptcy Act.

The extension acts discussed above also extended the expiration dates for Section 404(a) so that the bankruptcy courts provided for in the Bankruptcy Act of 1898 remained in effect until June 27, 1984. *See* Pub.L. No. 98–249 § 1(b), 98 Stat. 116 (1984); Pub.L. No. 98–271 § 1(b), 98 Stat. 163 (1984); Pub.L. No. 98–299 § 1(b), 98 Stat. 214 (1984); Pub.L. No. 98–325 § 1(b), 98 Stat. 268 (1984). The 1978 Act, as amended by Section 1(a) of the above cited extension acts, provided in Section 402(b) that Title II of the 1978 Act would take effect on June 28, 1984. Thus, on June 28, 1984, when the last extension act expired, Title II went into effect.

9. It is the opinion of the Court that Section 121(e) is redundant and that Congress inserted Section 121(e) to assure continuity of the bankruptcy system during the transition period. *See* note 7, *supra.*

Title II contained Section 201(a) of the 1978 Act, which provides: "There shall be in each judicial district, as an adjunct to the district court for such district, a bankruptcy court which shall be a court of record known as the United States Bankruptcy Court for the district." 28 U.S.C. § 151(a). Thus, there was no gap in the continuity of the incumbency of the bankruptcy court. When the extension expired on June 27, 1984, the bankruptcy system of the 1978 Act was activated.[10] It is the conclusion of the Court that there was no gap in the incumbency of the bankruptcy judges or of the bankruptcy courts; therefore, the Appointments Clause of Article II has not been triggered because no vacancy occurred.

It is the judgment of the Court that Sections 104(a), 106(a), and 121(e) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 are constitutional; therefore defendant's motion to dismiss is DENIED.

---

**10.** The Court agrees with the conclusion reached by Judge Mihm in *In re Moens* that *Marathon* invalidated only the expanded jurisdictional grant of the bankruptcy courts; there-fore, *Marathon* does not negate the court system created by the 1978 Act "nor interfere with its June 28, 1984 start-up." *In re Moens,* slip op. at 8.