## Matter of ASSOCIATED GROCERS OF NEBRASKA COOPERATIVE, INC., Debtor.

## ASSOCIATED GROCERS OF NEBRASKA COOPERATIVE, INC.,

v.

## AMERICAN HOME PRODUCTS CORP., et al., Defendants.

Nos. CV 85–0–341 to CV 85–0–347, CV 85–0–349 to CV 85–0–359, CV 85–0–361 to CV 85–0–362 and CV 85–0–383 to CV 85–0–402.

United States District Court,
D. Nebraska.

June 20, 1986.

Nelson & Harding, Robert V. Ginn and MaryBeth Frankman, Omaha, Neb., for Associated Grocers of Nebraska.

Kennedy, Holland Law Firm, Frank M. Schepers, Omaha, Neb., for official creditors committee.

Dixon, Dixon & Minahan, Harry D. Dixon, Jr. and Daniel W. Evans, Omaha, Neb., for American Home Products Corp.

Ronald D. Lahners, U.S. Atty., Douglas R. Semisch, Asst., and Richard K. Willard, Acting Asst. Atty. Gen., Civil Div., and J. Christoffer Kohn, Tracy J. Whitaker and Allen L. Lear, Attys. U.S. Dept. of Justice, Washington, D.C., for U.S.A., intervenor.

## ORDER

BEAM, Chief Judge.

These matters arise out of adversary proceedings brought in the United States Bankruptcy Court by Associated Grocers of Nebraska Cooperative, Inc., the debtor-in-possession, against American Home Products Corporation and several other defendants (hereinafter referred to collectively as the "Trade Creditors").[1] In those actions, Associated Grocers sought in its first cause of action to set aside (1) certain preferential transfers pursuant to 11 U.S.C. § 547(b), and in its second cause of action to set aside (2) unauthorized post-petition transfers pursuant to 11 U.S.C. § 549(a) (Record on Appeal, filing 1—hereinafter R-1). In response, the Trade Creditors filed motions to dismiss alleging that the Bankruptcy Court could not constitutionally exercise jurisdiction over the claims of Associated Grocers without violating Article III of the United States Constitution. The Bankruptcy Court sustained the motions to dismiss, holding that 28 U.S.C. § 157(b)(2)(F) unconstitutionally vests Article III powers in judges lacking the commensurate protections. *Associated Grocers of Nebraska Cooperative, Inc. v. Nabisco*, 46 B.R. 173, 175 (Bankr.D.Neb. 1985).

Associated Grocers filed motions to vacate and to reconsider. After argument, the Bankruptcy Court reinstated Associated Grocers' second claim for the recovery of alleged unauthorized post-petition transfers (R-33). The Bankruptcy Court, in finding that it had subject matter jurisdiction to hear and determine a post-petition transfer case, held that by accepting a post-petition transfer, a creditor sufficiently subjects himself to the jurisdiction of the Bankruptcy Court so as to constitute consent to the Bankruptcy Court's jurisdiction (R-33, at 10–11).

1. American Home Products Corporation; E.J. Brach & Sons, Inc.; Campbell Soup Company; Federal Fruit & Produce Co.; General Foods Corporation; George A. Hormel & Co.; George's Processing, Inc.; Hudson Foods, Inc.; S.C. Johnson & Son, Inc.; Kellogg Sales Company; Kimberly-Clark Corporation; Mars, Incorporated; Mass Merchandisers, Inc.; Metz Baking Co.; Nabisco Brands, Inc.; Oscar Mayer & Co., Inc.; Philip Morris Incorporated; Ralston Purina Company; United States Tobacco Co.; Castle & Cooke, Inc., et al.

This Court granted leave for Associated Grocers to appeal the dismissal of its first cause of action concerning the preferential transfers, and leave for the Trade Creditors to cross-appeal the reinstatement of the second cause of action concerning alleged unauthorized post-petition transfers. In addition, the United States and the Official Creditors' Committee were granted leave to intervene to support the constitutionality of 28 U.S.C. § 157(b)(2)(F). For the reasons set forth below, the Court finds that 28 U.S.C. § 157(b)(2)(F),[2] on the facts presented here, does not violate Article III of the constitution, and that the cases should be remanded to the Bankruptcy

---

**2.** The central issue on appeal is whether 28 U.S.C. § 157(b)(2)(F) violates Article III of the United States Constitution.

28 U.S.C. § 157. Procedures:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claim against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory absention provision of section 1334(c)(2).

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in the district in which the bankruptcy case is pending, or in the district court in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

*Id.*

Court for consideration of the merits of the causes of action.

## DISCUSSION

The Trade Creditors contend that Congress, by awarding bankruptcy judges jurisdiction to enter final judgments in cases involving claims of preferential transfers, has unconstitutionally vested such judges with inherently judicial powers reserved for Article III judges.[3]

Article III is designed to provide judicial impartiality and is "an inseparable element of the constitutional system of checks and balances...." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58, 102 S.Ct. 2858, 2865, 73 L.Ed.2d 598 (1982). "[It] both defines the power and protects the independence of the Judicial Branch." *Id.* Article III provides:

> The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

U.S. Const. art. III, § 1. The difficulty inherent in the interpretation of this language is illustrated by the statement of the Supreme Court when it said that "[a]n absolute construction of Article III is not possible in this area of 'frequently arcane distinctions and confusing precedents.'" *Thomas v. Union Carbide Agricultural Products, Co.*, —— U.S. ——, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985), *quoting Marathon*, 458 U.S. at 90, 102 S.Ct. at 2881. "Neither this Court nor Congress has read the Constitution as requiring every federal question arising under the federal law ... to be tried in an Art. III court before a judge enjoying life tenure and protection against salary reduction." [Citations omitted.] *Thomas*, 105 S.Ct. at 3334.

In *Marathon*, a divided Supreme Court was "unable to agree on the precise scope and nature of Article III's limitations. The Court's holding in that case establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." *Thomas*, 105 S.Ct. at 3335, *citing Marathon*, 458 U.S. at 84, 102 S.Ct. at 2878 (plurality opinion), *id.*, at 90–92, 102 S.Ct. at 2881–2882 (opinion concurring in judgment), *id.*, at 92, 102 S.Ct. at 2882 (Burger, C.J., dissenting). *Marathon* did not "implicate the jurisdiction of the bankruptcy courts in other matters within the 'traditional' bankruptcy jurisdiction." *In re Kaiser*, 722 F.2d 1574, 1580 (2d Cir. 1983). As the Court pointed out in *Kaiser*:

> [*Marathon*] stated that "the restructuring of the debtor-creditor relations, which is at the core of the federal bankruptcy power, ... may well be a 'public right'" and thus subject to adjudication in an Article I court. 458 U.S. at 71 [102 S.Ct. at 2871]. *See also* 458 U.S. at 92 [102 S.Ct. at 2882] (Burger, C.J., dissenting) ("I write separately to emphasize that, notwithstanding the plurality opinion, the Court does *not* hold today that

---

**3.** It is well established that the Bankruptcy Court did not have authority to issue a binding and final order on whether the Bankruptcy Court had jurisdiction to find 28 U.S.C. § 157(b)(2)(F) unconstitutional. *Crowell v. Benson*, 285 U.S. 22, 63–64, 52 S.Ct. 285, 297–298, 76 L.Ed. 598 (1932). However, the conclusions of law from the Bankruptcy Court are not binding on this Court. Accordingly, nothing will be gained by a delay in the resolution of the constitutional issue. *Committee of Disputed Litigation Creditors v. McDonald Investments, Inc.*, 42 B.R. 981, 985 (N.D.Tex.1984). This Court could have withdrawn reference from the Bankruptcy Court to determine the issue of constitutionality in the first instance. 28 U.S.C. § 157(d). *See also In re Production Steel, Inc.*, 48 B.R. 841, 842 (M.D.Tenn.1985). To remand the matter now on the basis that the Bankruptcy Court lacked jurisdiction to consider the issue and enter a final order would likely result in an immediate motion to withdraw from the Bankruptcy Court for this Court's consideration of the constitutional issues.

Congress' broad grant of jurisdiction to the new bankruptcy courts is generally inconsistent with Article III .... Rather, the Court's holding is limited to the proposition stated by Justice Rehnquist in his concurrence in the judgment—that a 'traditional' state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent consent of the litigants, be heard by an 'Article III court' if it is to be heard by any court or agency of the United States. This limited holding, of course, does not suggest that there is something inherently unconstitutional about the new bankruptcy courts; nor does it preclude such courts from adjudicating all but a relatively narrow category of claims 'arising under' or 'arising in or related to cases under' the Bankruptcy Act.").

*In re Kaiser,* 722 F.2d at 1580, n. 2. The Supreme Court invalidated the jurisdictional grant on separability grounds, not on the grounds the bankruptcy courts could not adjudicate traditional bankruptcy matters. *Id.* at 1580.

The Trade Creditors' claim that giving bankruptcy courts' jurisdiction to make final determinations in claims of preferential transfers pursuant to Section 547(b) and Section 549(a) is unconstitutional because (a) an action to recover a preference is a private right not a public right; (b) the right to recover a preference is not a congressionally created right; and (c) the powers granted bankruptcy judges are greater than those which may be permissibly granted adjuncts.

The first argument focuses on the distinction made by Justice Brennan in *Marathon* between "public rights" and "private rights." *Marathon,* 458 U.S. at 62–76, 102 S.Ct. at 2866–2874. In *Marathon* the United States argued that Congress could, pursuant to its Article I powers, create a legislative court (a non-Article III court) in " 'specialized areas having particularized needs and warranting distinctive' treatment such as the area of bankruptcy law."

*Marathon,* 458 U.S. at 62–63, 102 S.Ct. at 2867. Justice Brennan identified three situations in which Congress could create legislative courts without violating Article III. *Id.* at 65–69, 102 S.Ct. at 2868–2870. The three categories identified were territorial courts, courts-martial, and courts to adjudicate public rights. *Id.* at 71, 102 S.Ct. at 2871. Justice Brennan states that:

> The distinction between public rights and private rights has not been definitively explained in our precedents. Nor is it necessary to do so in the present cases, for it suffices to observe that a matter of public rights must at a minimum arise "between the government and others." *Ex parte Bakelite Corp.,* 279 U.S. 438, 451 [49 S.Ct. 411, 413, 73 L.Ed. 789] (1929). In contrast, "the liability of one individual to another under the law as defined," *Crowell v. Benson,* 285 U.S. 22, 51 [52 S.Ct. 285, 292, 76 L.Ed. 598] (1932), is a matter of private rights. Our precedents clearly establish that only controversies in the former category may be removed from Art. III courts and delegated to legislative courts or administrative agencies for their determination. See *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n,* 430 U.S. 442, 450, n. 7, [97 S.Ct. 1261, 1266 n. 7, 51 L.Ed.2d 464] (1977); *Crowell v. Benson,* 285 U.S. at 50–51 [52 S.Ct. at 292–293]. See also Katz, Federal Legislative Courts, 43 Harv.L.Rev. 894, 917–918 (1930). Private-rights disputes, on the other hand, lie at the core of the historically recognized judicial power.

*Marathon,* 458 U.S. at 69–70, 102 S.Ct. at 2870–2871. In *Marathon* the Court determined that:

> We discern no such exceptional grant of power applicable in the cases before us. The courts created by the Bankruptcy Act of 1978 do not lie exclusively outside the States of the Federal Union, like those in the District of Columbia and the Territories. Nor do the Bankruptcy Courts bear any resemblance to courts-martial, which are founded upon the Constitution's grant of plenary authority

over the Nation's military forces to the Legislative and Executive Branches. Finally, *the substantive legal rights at issue in the present action cannot be deemed "public rights." Appellants argue that a discharge in bankruptcy is indeed a "public right,"* similar to such congressionally created benefits as "radio station licenses, pilot licenses, or certificates for common carriers" granted by administrative agencies. See Brief for United States 34. *But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not.* Appellant Northern's right to recover contract damages to augment its estate is "one of private right, that is, of the liability of one individual to another under the law as defined." *Crowell v. Benson,* 285 U.S. at 51, 52 S.Ct. at 292.

*Marathon,* 458 U.S. at 70–71, 102 S.Ct. at 2870–2871 (emphasis added).

The Trade Creditors contend that since the United States is not a party that preferences are not public rights nor congressionally created rights. In *Thomas* the Supreme Court specifically refuted any bright line distinction within the public rights ver-

sus private rights controversy. *Thomas,* 105 S.Ct. at 3342.[4]

This theory that the public rights/private rights dichotomy of *Crowell* and *Murray's Lessee,* [v. Hobaken Land & Improvement Co., 18 Haw. 272, 15 L.Ed. 372 (1856) ] *supra,* provides a bright line test for determining the requirements of Article III did not command a majority of the Court in *Northern Pipeline.* Insofar as appellees interpret that case and *Crowell* as establishing that the right to an Article III forum is absolute unless the federal government is a party of record, we cannot agree. *Cf. Northern Pipeline Co., supra,* at 71 [102 S.Ct. at 2871], (plurality) (noting that discharge in bankruptcy, which adjusts liabilities between individuals, is arguably a public right). But see *id.,* at 69, n. 23 [102 S.Ct. at 2870 n. 23]. Nor did a majority of the Court endorse the implication of the private right/public right dichotomy that Article III has no force simply because a dispute is between the Government and an individual. Compare *id.,* at 68, n. 20 [102 S.Ct. at 2870 n. 20].

*Thomas,* 105 S.Ct. at 3336.[5]

The Court in *Thomas* reiterated that "[t]he enduring lesson of *Crowell* [285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1931) ] is that practical attention to substance rather than doctrinaire reliance on formal categories should inform application of Article III." *Thomas,* 105 S.Ct. at 3336, *citing Glidden Co. v. Zdanok,* 370 U.S. 530, 547–

---

4. Interestingly, in *In re Production Steel, Inc.,* 48 B.R. 841, 844 (M.D.Tenn.1985) the Court characterized the functions of the bankruptcy court under the Bankruptcy Act of 1984 into two categories. "First, each court is a 'legislative court' with the authority to make final judgments on matters that are at the core of the federal bankruptcy power. Second, each court is also an adjunct to the district court in matters that are merely related to bankruptcy proceedings." *Id.* at 846.

5. In *Thomas,* even Justice Brennan admitted: I agree with the Court that the determinative factor with respect to the proper characterization of the nature of the dispute in this case should not be the presence or absence of the government as a party. [Citations omitted.] Despite the Court's contrary suggestions, the

plurality opinion in *Northern Pipeline* suggests neither that "the right to an Article III forum is absolute unless the federal government is a party of record" nor that Article III has no force simply because a dispute is between the Government and an individual." [Citations omitted.] Properly understood, the analysis elaborated by the plurality in *Northern Pipeline* does not place the federal government in an Art. III straight-jacket whenever a dispute technically is one between private parties. We recognized that a bankruptcy adjudication, though technically a dispute among private parties, may well be properly characterized as a matter of public rights.
*Thomas,* 105 S.Ct. at 3342 (Brennan, J., concurring).

548, 82 S.Ct. 1459, 1471, 8 L.Ed.2d 671 (1962); *see also Crowell,* 285 U.S. at 53, 52 S.Ct. at 293. "The extent of judicial review afforded by the legislation reviewed in *Crowell* does not constitute a minimal requirement of Article III without regard to the origin of the right at issue or the concerns guiding the selection by Congress of a particular method for resolving dispute." *Thomas,* 105 S.Ct. at 3336. In *Crowell* the statute "displaced a traditional cause of action and affected a pre-existing relationship based on a common-law contract for hire." *Id.*

In *Thomas,* the majority held that "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, may create a seemingly 'private' right that is so closely integrated to a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Thomas,* 105 S.Ct. at 3340.

In reaching this conclusion, the Court analyzed the substance of the statute at issue. A similar analysis of 28 U.S.C. § 157(b)(2)(F) as applied to an 11 U.S.C. § 547(b) or 11 U.S.C. § 549(a) preference action results in this Court holding that Article III does not preclude the bankruptcy judge from entering final orders in an 11 U.S.C. § 547(b) or 11 U.S.C. § 549(a) preference action subject to traditional appellate review by an Article III Court. Like the arbitration statute under FIFRA that the Court analyzed in *Thomas,* the scheme created under 28 U.S.C. § 157(b)(2)(F) and 11 U.S.C. § 547(b) or 11 U.S.C. § 549(a) does not depend on state law for the rule of decision, or replace a cause of action cognizable under state law. *Thomas,* 105 S.Ct. at 3335. *Cf. Marathon,* 458 U.S. at 84–85, 102 S.Ct. at 2878–79 (plurality opinion) (contract claims at issue were matter of state law); *Crowell,* 285 U.S. at 39–40, 52 S.Ct. at 287–288 (replacing traditional admiralty negligence action with administrative scheme of strict liability).

■ Historically, under the common law a debtor may lawfully prefer anyone or more of his creditors over other creditors as long as the object of the transaction is to secure the payment of the debt. 4 *Collier on Bankruptcy,* ¶ 547.01 (15th ed. 1986). The treatise said:

> It is only where such a transfer is related to a subsequent bankruptcy or insolvency statute that it runs afoul of prohibitory legislation and becomes invalid. As stated in *Johnson-Baillie Shoe Co. v. Bardsley, Elmer & Nichols,* 237 F. 763, 767 (8th Cir.1916),

> > "Until the commencement of bankruptcy proceedings a debtor has the right to dispose of his property, the right to secure and pay his debts with it, and the right to secure and pay one of his creditors in preference to others, provided the payment or security is not violative of any act of Congress or law of the state."

> Accordingly, the entire invalidity of a transaction as a preference, when considered in the light of the debtor's subsequent bankruptcy, must come from the Bankruptcy Code itself.

> ... It was conceded under former Section 60a, the precursor of section 547, however, that a preference which may be avoided in bankruptcy is defined exclusively by that statute, except insofar as section 544(b) (former Section 70e) adopts any nonbankruptcy federal or state law making preferential transfers voidable. Consequently, as a general rule, any transaction sought to be avoided as preferential by a bankruptcy trustee preliminarily should be tested by the requirements of section 547(b). If these requirements are met, then the matter of recovery itself is governed generally by section 550. Nevertheless, merely because a preference cannot be established and avoided under section 547 does not thereby eliminate all recourse to action that the bankruptcy trustee may have with respect to preferences. An appropriate federal or state law may invalidate "preferences," and the trustee, using the powers given him under section 544(b), may thus attempt to set aside a transfer as preferential and invalid under such a

law. In that case, the elements of a preference as outlined by the federal or state (usually State) statute will be controlling rather than the provisions of section 547.

4 *Collier*, at ¶ 547.01. Likewise, Section 549(a) that allows the trustee to set aside non-authorized post-petition transfers made on account of antecedent debts do not rely on state law or replace a state law cause of action.[6] *See* 4 *Collier*, at ¶ 549 *et seq*. These particular rights under 11 U.S.C. §§ 547(b) and 549(a) are congressionally created rights.

After recognizing the necessity of effective adjudication of rights under 11 U.S.C. §§ 547(b) and 549(a) and analyzing the origin and nature of these rights, this Court does not believe the independent role of the judiciary in our constitutional scheme is threatened by a bankruptcy judge entering final orders in such matters under 28 U.S.C. § 157(b)(2)(F). "To hold otherwise would be to defeat the obvious purpose of the legislation to furnish a prompt, continuous, expert and inexpensive method for dealing with a class of questions of fact which are peculiarly suited to examination and determination by a [non-article III officer] specially assigned to that task." *Thomas*, 105 S.Ct. at 3338, *quoting Crowell*, 285 U.S. at 46, 52 S.Ct. at 290.

In addition, the chance of unwarranted encroachment on the Article III judicial power is further minimized since the total scheme enacted by Congress for the adjudication of 11 U.S.C §§ 547(b) and 549(a) rights provides for both intervention and review by an Article III Court. The district court retains primary jurisdiction over bankruptcy proceedings. 28 U.S.C. § 1334. Bankruptcy judges are a "unit" of the district court, and their exercise of adjudicatory authority is subject to the "rule or order of the district court." 28 U.S.C. § 151. Bankruptcy judges are appointed by Article III courts of appeals and are removable by the judicial council of the Circuit. 28 U.S.C. § 152(a)(1) and (3). 28 U.S.C. § 157(d) provides that the district court upon its own motion or the timely motion of a party may withdraw for cause shown any case or proceeding in whole or part from the bankruptcy court. This gives the district court control over the fact finding function of the bankruptcy court in these matters since the district court could choose to hear the matters in the first instance.

If the matter is not withdrawn, the district court exercises traditional appellate review over the proceedings. 28 U.S.C. § 158. *Bankr. Rule* 8013 provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

*Bankr.Rule* 8013. *See also Proposed Court Rules* 8013, reprinted in 107 F.R.D. 403, 556 (1985). While the district court is bound by the clearly erroneous standard for review of facts, such restriction does not limit the review of the law or of any fundamental or jurisdictional facts.[7] These

---

6. The Court notes that Article III may indeed limit a bankruptcy court's power to enter a final order in transfers preferential and voidable under federal or state law pursuant to 11 U.S.C. § 544(b). The matters dependent on state law for the rule of decision would be very similar to the transaction in *Marathon*. However, the Court need not reach that issue here since the preference actions were brought pursuant to 11 U.S.C. §§ 547(b) and 549(a).

7. A jurisdictional fact would, be for instance, whether the proceeding comes within the strictures of 11 U.S.C. § 547(b) rather than for instance 11 U.S.C. § 544(b), and should be considered a core or non-core proceeding. *See Walters v. Nat'l Assoc. of Radiation Survivors*, — U.S. —, 105 S.Ct. 3180, 3185 n. 3, 87 L.Ed.2d 220 (1985) (review of constitutional error is preserved); *Johnson v. Robison*, 415 U.S. 361, 367–368, 94 S.Ct. 1160, 1165–1166, 39 L.Ed.2d 389 (1974).

latter are subject to de novo review by the district court.[8] *Crowell*, 285 U.S. at 53–55, 52 S.Ct. at 293–294. *See also First National Bank in Sioux Falls v. National Bank of South Dakota*, 667 F.2d 708 (8th Cir.1981). In addition, any mixed questions of law and fact that primarily involve legal questions would be subject to de novo review. *See U.S.A. v. Maull*, 773 F.2d 1479 (8th Cir.1985).

■ In conclusion, this Court holds that Article III is not violated by the scheme Congress enacted granting the Bankruptcy Court the power under 28 U.S.C. § 157(b)(2)(F) to avoid preference transfers under 11 U.S.C. §§ 547(b) and 549(a), and enter final orders therein subject to traditional appellate review by an Article III court. *See In re Tom Carter*, 44 B.R. 605 (C.D.Cal.1984); *In re TWI, Inc.*, 51 B.R. 470 (Bankr.E.D.Va.1985). These cases, therefore, shall be remanded to the Bankruptcy Court for determination on the merits.

Accordingly,

IT IS ORDERED that the orders of the Bankruptcy Court in CV 85–0–341 through CV 85–0–347 and CV 85–0–349 through CV 85–0–359 and CV 85–0–361 through CV 85–0–362 sustaining the motions to dismiss the first causes of action for preferences and holding that 28 U.S.C. § 157(b)(2)(F) is unconstitutional should be and hereby are reversed. The cases are remanded to the Bankruptcy Court for determination on the merits.

IT IS FURTHER ORDERED that the orders of the Bankruptcy Court in CV 85–0–383 through CV 85–0–402 denying the motions to dismiss the second causes of action for post-petition transfers should be and hereby are affirmed. The cases are remanded to the Bankruptcy Court for a determination on the merits.

---

**8.** At least six courts of appeal have upheld the constitutionality of the reference rule promulgated after the *Marathon* decision to keep the bankruptcy system functioning: In re *Colorado Energy Supply Inc.*, 728 F.2d 1283 (10th Cir. 1984); *In re Kaiser*, 722 F.2d at 1574; *Coastal Steel v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983). *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254 (6th Cir.1983); *In re Hansen*, 702 F.2d 728 (8th Cir.), *cert. denied*, 413 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); *In re Braniff Airways, Inc.*, 700 F.2d 214 (5th Cir.), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983).

The Court in *In re Tom Carter*, 44 B.R. 605, 609 (C.D.Cal.1984) stated:

The court system established by the 1984 Act is a congressional adoption and codification of the system utilized under the reference rule. Indeed, the only significant distinction between the two systems is a different standard of review in core matters. Under the reference rule, the district court was not required to give deference to the findings of the bankruptcy judge and could hold its own hearing and receive additional evidence. Under the 1984 Act, the district court acts as a Court of Appeals, applying a clearly erroneous standard of review.

However, such a difference is merely textual. Under the 1984 system, the district court retains the power to withdraw any proceeding at any time prior to the final decision by the bankruptcy judge. Thus, the district court has the discretion to review on appeal or withdraw reference and exercise complete authority over the proceeding. In any event, a clearly erroneous standard of review for core matters has been held fully consistent with Article III principles. *In re Morrissey*, 717 F.2d 100, 104 (3rd Cir.1981); *1616 Reminc Ltd. Partnership v. Atchison & Keller*, 704 F.2d 1313 (4th Cir.1983).

*In re Tom Carter*, 44 B.R. at 609. Additionally, the Eighth Circuit has determined that the clearly erroneous standard of review binds the district court. *In re Hunter*, 771 F.2d 1126, 1129 n. 3 (8th Cir.1985). The Supreme Court has proposed the clearly erroneous standard for review of factual findings of core rulings in the new proposed Bankruptcy Rules *Proposed Court Rules*, 8013 reprinted in 107 F.R.D. 403, 556 (1985).